956 So.2d 911 (2006)
Julianna LAMAR, Appellant
v.
THOMAS FOWLER TRUCKING, INC., Appellee.
No. 2004-CA-00280-COA.
Court of Appeals of Mississippi.
April 4, 2006.
Rehearing Denied September 26, 2006.
*913 Craig Robert Sessums, John Griffin Jones, Jackson, attorneys for appellant.
Charles Edward Greer, and Edward J. Currie, Jackson, attorneys for appellee.
Before KING, C.J., IRVING and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Summary judgment was granted to Fowler Trucking, Inc. by the Circuit Court of Panola County. Julianna Lamar appeals, arguing that she was not barred by the Workers' Compensation Act from filing a common law wrongful death claim. We find that the circuit court properly granted summary judgment. Consequently, we affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Thomas Fowler Trucking, Inc. (Fowler Trucking), is a corporation which performed contract hauling exclusively for Golden Timber, Inc. (Golden Timber), a family-owned business, operating a logging mill, logging crew, pallet stock, lumber tie, and trucking enterprise near Senatobia, Mississippi. Golden Timber used Fowler Trucking exclusively to do its hauling, and Fowler Trucking hauled timber exclusively for Golden Timber. On job sites, Fowler Trucking's employees were subject to the direction of Golden Timber, and Golden Timber had the right to discharge Fowler Trucking's employees from a job if dissatisfied with their work.
¶ 3. Ira Lee Bobo was employed as a truck driver for Fowler Trucking from February 1, 1994, until his death on April 30, 1997. Juliana Lamar, the appellant, is the daughter and heir of Ira Lee Bobo, the deceased. Lamar brought this action individually and on behalf of all wrongful death beneficiaries of Bobo against Fowler Trucking.
¶ 4. Golden Timber contracted with Fowler Trucking to haul cut logs off a site known as the James Russell Tract near Independence, Mississippi. At the time of his fatal accident, Bobo was the only Fowler Trucking employee working at the site. The truck Bobo was driving was loaded with logs by employees of Golden Timber. After the truck was loaded, Bobo and two Golden Timber employees, Michael Long and Curtis Webb, attempted to bind the load to Bobo's trailer. Bobo threw the front binding cable over the load and then threw the back cable over. The back cable did not go completely over on the first attempt. When Bobo got the cable over, he asked the load operator to pass the end of the cable to him under the truck. Bobo made the connection and began to bind the rear of the load. As Bobo tightened the binding, the force began to lift and shift the logs in the front of the trailer. A *914 heavy log fell on Bobo, causing injuries which led to his death.
¶ 5. Lamar filed her complaint in the Circuit Court of the First Judicial District of Panola County, Mississippi, on April 25, 2000, alleging that Fowler Trucking, Golden Timber, and Michael Long were negligent in causing the death of Bobo. A subsequent agreed order dismissed Golden Timber and its employees without prejudice, because Golden Timber was the "statutory employer" of Bobo at the time of Bobo's death and was afforded protection under the exclusivity provision of the Mississippi Workers' Compensation Act.[1] Golden Timber, through the Mississippi Loggers Self-Insured Fund, paid a total of $11,757.65 in workers' compensation benefits to the beneficiaries of Bobo.
¶ 6. On February 10, 2003, Fowler Trucking filed a motion for summary judgment, pursuant to Rule 56 of the Mississippi Rules of Civil Procedure, stating that the court should dismiss with prejudice Lamar's claims. Fowler Trucking argued that it had "secured" payment of workers' compensation for Bobo, as required by Mississippi Code Annotated section 71-3-9, by actually reimbursing the general contractor, Golden Timber, the amount necessary to have Fowler Trucking's employees covered by Golden Timber's workers' compensation insurance. Fowler Trucking contended that the record undisputably showed that, pursuant to a long-standing agreement between Golden Timber and Fowler Trucking, Golden Timber provided workers' compensation for the employees of Fowler Trucking but deducted payment for the workers' compensation coverage from the gross proceeds paid to Fowler Trucking.
¶ 7. In response, Lamar argued that Fowler Trucking failed to establish that no genuine issue of material fact existed on the issue of payment and that any payment would be irrelevant because, as the statutory employer, Golden Timber would have had to secure coverage for Bobo regardless of whether Golden Timber received any reimbursement from Fowler Trucking. Instead, Lamar argued that the real issue before the court was whether a subcontractor who failed to provide mandatory coverage for its employees is liable under section 71-3-9, where the statutory employer voluntarily provided compensation benefits for the subcontractor's employee. Lamar contended that allowing the subcontractor immunity in such a circumstance would defeat the purposes of the Workers' Compensation Act as it would provide no incentive for any subcontractor in the State of Mississippi to comply with the mandatory coverage provisions where there was a responsible general contractor. Lamar stated "the core of our argument" to be that "an employer that is required to have coverage under the act, has five or more employees, has to pay for the immunity. It has to pay something for it. It has to suffer a detriment. . . . You've got to pay for the immunity. You can't simply use another employer up the line's immunity as a derivative type of immunity and apply it down the line. . . ." Both parties admitted the issue of down-the-line immunity to be a matter of first impression before the courts of Mississippi.
*915 ¶ 8. On December 23, 2004, the trial court granted Fowler Trucking's motion for summary judgment and denied Lamar's motion for partial summary judgment based on the exclusive liability provision of the Mississippi Workers' Compensation Act. Noting that Fowler Trucking did not obtain workers' compensation benefits "directly" for Bobo, the circuit court defined the issue to be "whether a subcontractor who fails to secure workers' compensation coverage is entitled to the benefit of the exclusive liability provision, even if an `up-the-ladder' contractor becomes liable for payment of benefits to the employee." The court recognized that while not addressing the specific issue, Bevis v. Linkous Construction Co., 856 So.2d 535, 541(¶ 16) (Miss.Ct.App.2003), stated "so long as coverage is provided either by the subcontractor or the contractor, recovery under workers' compensation is the injured worker's sole remedy." The court determined that "until the Mississippi legislature or the appellate courts address the issue, this Court can only interpret [section 71-3-9] to provide for an election of remedies in this situation. Since Bobo's beneficiaries benefitted from the provisions of the Mississippi Workers' Compensation Act, and they do not assert an exception under the Statute, an independent tort action cannot also follow." Aggrieved, Lamar appealed, claiming that Fowler Trucking had at least five employees but failed to secure workers' compensation insurance for its employees as required by the Mississippi Workers' Compensation Act, Mississippi Code Annotated sections 71-3-5 and 71-3-7 (Rev.2000). Accordingly, Lamar contends that Fowler Trucking cannot claim exemption from the negligence claims.

STANDARD OF REVIEW
¶ 9. "The movant under Rule 56 is asserting that on the basis of the record as it then exists, there is no genuine issue as to any material fact and that he is entitled to a judgment on the merits as a matter of law." M.R.C.P. 56 cmt. A trial court is proper in granting summary judgement under Mississippi Rules of Civil Procedure Rule 56(c) where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thornton v. W.E. Blain & Sons, Inc., 878 So.2d 1082, 1085-86(¶ 10) (Miss.Ct.App.2004). "The unmistakable language" of Rule 56 "provides that mere denial is insufficient to create an issue of fact. . . . This is true whether the denial be in the pleadings, briefs or arguments. Only sworn denials providing a credible basis therefor in evidentiary fact will suffice." Brown v. Credit Center, 444 So.2d 358, 364 (Miss.1984) (citations omitted).
¶ 10. "This Court applies a de novo standard of review to a grant of summary judgment by the lower court. The evidence must be viewed in the light most favorable to the party against whom the motion has been made." Russell v. Orr, 700 So.2d 619, 622(¶ 8) (Miss.1997).

ISSUES AND ANALYSIS
I. WHETHER THE CIRCUIT COURT WAS CORRECT IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FOWLER TRUCKING
¶ 11. The ultimate issue is whether Lamar is statutorily prevented from pursuing a common law wrongful death action against Fowler Trucking. In resolving this issue, Fowler Trucking contends that we need not address, as did the trial court, the broad issue of whether immunity extends *916 "down the line," from contractor to subcontractor, in all situations, which is a matter of first impression in Mississippi.[2] Rather, Fowler Trucking argues that we can determine that, in this particular situation, the subcontractor is entitled to immunity from suit because it was actually paying the general contractor for the workers' compensation coverage of its employees. Having thoroughly considered this argument, we reject it.
¶ 12. According to the Mississippi Workers' Compensation Act, Fowler Trucking qualified as an "employer" because it had five or more workmen under contract of hire:
The following shall constitute employers subject to the provisions of this chapter: Every person, firm and private corporation, including any public service corporation but excluding, however, all nonprofit charitable, fraternal, cultural, or religious corporations or associations, that have in service five (5) or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied.
Miss.Code. Ann. § 71-3-5 (Rev.2000). Fowler Trucking, as an employer, had an obligation to secure compensation for its employees:
Every employer to whom this chapter applies shall be liable for and shall secure the payment to his employees of the compensation payable under its provisions.
In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment.
Miss.Code Ann. § 71-3-7 (Rev.2000). The Mississippi Workers' Compensation Act provides immunity from suit in tort where the employer in fact secured coverage:
The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee . . . except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death.
Miss.Code Ann. § 71-3-9 (Rev.2000) (emphasis added).
¶ 13. Lamar argues that Fowler Trucking should not be granted immunity because it had five employees and failed to secure workers' compensation coverage as required by statute. Lamar bases her argument on the premise that "every employer," not just the "statutory employer," is required by the Workers' Compensation Act to secure coverage. Arguing that Fowler Trucking did not obtain coverage as required by statute, Lamar contends that Fowler Trucking should not be afforded the protection of the Workers' Compensation Act. Lamar reasons that she should be able to pursue a common law action against Fowler Trucking. Because we find that Lamar had already elected her remedy at the time of the filing of her lawsuit, we disagree.
A. Whether Fowler Trucking "indirectly secured" coverage, thereby entitling it to immunity from suit.
¶ 14. The trial court correctly determined that Fowler Trucking did not "directly" *917 secure workers' compensation benefits for the company employees. Section 71-3-75 of the Mississippi Code provides that, unless exempted by the Commission from the obligation to ensure payment, an employer can secure workers' compensation coverage in only one of two ways: (1) by purchasing a workers' compensation insurance policy through a carrier that has been authorized by the Commission, or (2) by qualifying, with the approval of the Commission, as a self-insurer. Taylor v. Crosby Forest Prods. Co., 198 So.2d 809, 811 (Miss.1967); McCoy v. Cornish Lumber Co., 220 Miss. 577, 585, 71 So.2d 304, 307 (1954). Fowler Trucking admits that it did not directly secure coverage by either of these two means.
¶ 15. Fowler Trucking argues, however, that it did "indirectly secure" coverage through Golden Timber. Lamar counters that the evidence establishes that Fowler Trucking did not pay Golden Timber to provide coverage. We reject Lamar's contention and find there to be no genuine dispute that Fowler Trucking actually reimbursed Golden Timber for the benefits provided to Lamar. The record reflects that Fowler Trucking had an agreement with Golden Timber, whereby Golden Timber would procure workers' compensation insurance for the employees of Fowler Trucking. Both Carla Corbitt, the Rule 30(b)(6) representative of Golden Timber, and Thomas Fowler testified that workers' compensation premiums were paid by Fowler Trucking for company employees through deductions made for each truck driven by Fowler Trucking employees at a rate of seven dollars per day per truck. Mr. Fowler testified that it was his understanding that workers' compensation premiums were always deducted from the gross proceeds received from Golden Timber. Corbitt, who was bookkeeper for Fowler Trucking from its incorporation in 1995 until after April 1997, the month of Bobo's death, testified that within this time frame, "The insurance was held out from Fowler Trucking each week. The premium was $7 a day per truck, which was deducted from the gross wages at the end of the week." Rather than listing the employees, the premiums were listed by the truck the employee was driving. "Most of the time," Corbitt personally calculated the premium to be deducted.
¶ 16. Lamar argues that since Fowler Trucking "failed to produce any documents for the years 1996 and 1997 concerning premiums, payment of premiums or how premiums were calculated or who paid them . . . [t]here is no evidence that Fowler paid for workers' compensation coverage under Golden's policy." We disagree. While Fowler Trucking did not have documentation to substantiate Corbitt's and Fowler's testimony,[3] Lamar offered no documentation or testimony directly to contradict the sworn testimony of the witnesses. Accordingly, we find there to be no genuine dispute as to whether Fowler Trucking reimbursed Golden Timber for the cost of workers' compensation coverage obtained for Fowler Trucking employees during the period in question.
¶ 17. Fowler Trucking argues that the Mississippi Supreme Court has recognized on several occasions that workers' compensation *918 insurance can be "secured" within the meaning of section 71-3-9 by having an agreement with another party to provide workers' compensation insurance for the injured employee. In Doubleday v. Boyd Construction Co., 418 So.2d 823 (Miss.1982), the court determined that the general contractor "secured" workers' compensation insurance by including a provision in the subcontract that the subcontractor was to provide workers' compensation insurance for its employees. Quoting Miami Roofing & Sheet Metal Co. v. Kindt, 48 So.2d 840, 843 (Fla.1950), the supreme court agreed "that if such contractor has in fact secured such compensation, either directly or indirectly through the subcontractor, the remedy under the Act is exclusive." Doubleday, 418 So.2d at 826. The court found that in requiring its subcontractor to secure a policy of insurance on its employees, the contractor "`secured' compensation insurance for the benefit of [the employee] within the meaning and purpose of the statute." Id. at 827. In Richmond v. Benchmark Constr., Inc., 692 So.2d 60 (Miss.1997), however, the court retreated from this analysis. Citing Richmond, Fowler Trucking improvidently argues that "a subcontractor like Fowler Trucking should be considered to have fulfilled its obligation under section 71-3-7 when it has an oral agreement with the general contractor that the general contractor will provide workers' compensation coverage for the subcontractor's employees." In fact, the court in Richmond held that "[t]he language in Doubleday unfortunately focuses on the verb `secure' . . . [t]he emphasis should not be on the verb `secure' but on the relationship between the parties." Id. at 63. Thus, the general contractor in Richmond did not receive immunity because of an oral agreement with the subcontractor, which "secured" coverage for the subcontractor's employees, but rather because of the relationship between general contractor and subcontractor which is created by section 71-3-7.
¶ 18. In the instant case, Fowler Trucking urges that we need not, as the trial court did, consider the issue of whether a non-compliant subcontractor is entitled to exclusivity where the statutory employer has paid. Fowler Trucking argues that, because it "indirectly" secured coverage for Lamar, it secured coverage under the act. This argument seems sufficient under the holding of Doubleday, but in light of the court's holding in Richmond, we find that Fowler Trucking's immunity is not to be determined by whether it indirectly secured coverage.[4] Instead, we *919 must determine whether the special statutory relationship which Richmond interpreted to create "up-the-line" immunity can be expanded to include "down-the-line" immunity to protect a non-compliant subcontractor. This, by the admittance of both parties, is an issue of first impression in Mississippi. There is no clear answer to the question, either in the Workers' Compensation Act, or in Mississippi case law. Accordingly, we must consider not only the language of our statute and rationales of the case law, but also the public policy supporting the Act.
B. Whether Fowler Trucking is entitled to "down-the-line" immunity.
¶ 19. The Mississippi Workers' Compensation Act was first adopted in 1948 to ensure prompt payment and medical treatment of injured workers. VARDAMAN S. DUNN, MISSISSIPPI WORKMEN'S COMPENSATION §§ 1, 2 (1982); 9 JEFFERY JACKSON AND MARY MILLER, ENCYCLOPEDIA OF MISSISSIPPI LAW, Workers' Compensation Law § 76:1, 2 (2002). In order to achieve this goal, the Act strikes a balance between the interests of employers and employees. Employees are assured immediate payment without regard to fault for their injuries, but give up the right to sue in tort. Employers are assured limited and measurable exposure to liability via the exclusivity provision of the Act, but give up the defense of fault. To insure that each party upholds its end of the bargain, the Act includes enforcement mechanisms. The primary mechanism is found in section 71-3-9: if an employer fails to secure workers' compensation coverage when required to do so by the Act, the employer loses the benefit of immunity and may be sued in tort.
¶ 20. By the language of the Act, immunity is available only to those employers who operate in compliance with the Act. See Miss.Code Ann. § 71-3-9. However, the exclusivity framework has been extended by the Mississippi Supreme Court to include those employers who may be considered "statutory employers" under section 71-3-7. This is the principle of "up-the-line immunity," and it has become well established in Mississippi law.
¶ 21. In Mosley v. Jones, 224 Miss. 725, 80 So.2d 819 (Miss.1955), the Mississippi Supreme Court gave "up-the-line" immunity to a general contractor considered a statutory employer of its subcontractor's employees. The court found that, "[s]ince the general contractor is . . . made the employer [of the subcontractor's employees] for the purposes of the compensation statute, it is obvious that he should enjoy the regular immunity of an employer from third-party suit when the facts are such that he could be made liable for compensation. . . ." Id. at 821 (quoting 2 LARSON, WORKMEN'S COMPENSATION LAW § 72.31, 175 (1952)). Under the statute, then, a general contractor's obligation to pay entitles it to immunity under the act.
¶ 22. In Doubleday, the court took this principle one step further. Doubleday involved a general contractor, Boyd Construction Company (Boyd), a subcontractor, W.T. Ratliff Co., Inc. (Ratliff), and Ratliff's employee, David Doubleday. The parties were engaged in a construction project for the Mississippi Highway Department. Pursuant to the subcontract between the parties, Ratliff carried workers' compensation insurance for its employees. Doubleday was injured in the course of his employment and was paid compensation benefits by Ratliff. Doubleday then filed suit in tort against Boyd, arguing that Boyd should not be entitled to the status of statutory employer because Ratliff had secured compensation insurance, *920 and Boyd's liability under section 71-3-7 would never spring into effect. The court rejected this argument, finding that "the intention and philosophy of the workmen's compensation act would be abrogated if the responsibility of carrying compensation insurance could be transferred from a general employer to another." Id. at 825. The court went on to note:
It would be paradoxical . . . in our opinion, to hold as the appellant entreats that a general contractor risk personal injury judgments in common law suits if he complies with the statute by contractually securing compensation insurance by his subcontractor, but if he lets work to subcontractors who do not comply with the act, then his liability is limited to the sums provided by the act. We do not think the legislature intended such an improbable result.
Id. at 826. The court therefore held that Boyd was entitled to immunity, because by means of contractually requiring Ratliff to provide workers' compensation coverage for Ratliff's employees, it had "secured" coverage, thereby fulfilling its obligation under the statute.
¶ 23. However, in Richmond v. Benchmark Constr., Inc., 692 So.2d 60 (Miss. 1997), the Mississippi Supreme Court retreated from the reasoning of Doubleday. Richmond involved an employee, Ernest Richmond, who worked for United Piping Systems (UPS). UPS subcontracted under Benchmark Construction Company (Benchmark) to perform plumbing work on a renovation project. Although there was no written contract, Benchmark and UPS orally agreed that UPS would provide workers' compensation insurance for UPS's employees. While working on the project, Richmond was injured. UPS paid workers' compensation benefits to Richmond, but Richmond nevertheless filed suit against both UPS and Benchmark. Appealing from the trial court's dismissal of Benchmark, Richmond argued that Benchmark was not entitled to immunity because, by having only an oral and not a written agreement with UPS, Benchmark had failed to "secure" compensation insurance for Richmond, and thus was not entitled to immunity under section 71-3-9. The supreme court found that the oral agreement was sufficient to secure compensation under the statute, but went on to revise the holding in Doubleday, stating "[t]he language in Doubleday unfortunately focuses on the verb `secure'. . . . The emphasis should not be on the verb `secure' but on the relationship between the parties." Id. at 63. This relationship is created by that part of section 71-3-7 which states that, "[i]n the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment." The court reasoned that this language "makes the contractor stand in the place of the subcontractor, if the subcontractor fails to obtain workers' compensation coverage." Richmond, 692 So.2d at 63. Therefore, because a general contractor must by statute carry its own policy of workers' compensation insurance and be prepared to pay if an employee of a subcontractor is injured, the general contractor is entitled to immunity regardless of the actual steps it takes to ensure that a subcontractor has secured coverage for the subcontractor's employees.
¶ 24. While the court in Richmond abandoned the reasoning of Doubleday, it did not abrogate the holding of Doubleday. The court merely clarified that a general contractor is not entitled to immunity because it secures workers' compensation coverage for a subcontractor's employees, but because it is subject to contingent *921 liability under the special relationship created by section 71-3-7. Immunity flows from the statute, not from any contractual relationship created between the parties.
¶ 25. In Bevis, this Court stated that, "so long as coverage is provided either by the subcontractor or the contractor, recovery under workers' compensation is the injured worker's sole remedy." Bevis, 856 So.2d at 541(¶ 16) (emphasis added). The trial court relied on this language to find that the "up-the-line" immunity in that case applied equally to a subcontractor in a "down-the-line" situation. We do not find that Bevis can automatically be applied to the "down-the-line" situation. We are compelled to examine this issue more closely. In the "up-the-line" situation, the general contractor is afforded immunity by virtue of its potential for being called upon to compensate the employee of its subcontractor under the Act. In a "down-the-line" situation, the subcontractor seeks immunity where it has already breached its obligation under the Act, and will not be called upon to compensate its employee under the Act. We are thus unwilling to extend the reasoning of Richmond to embrace "down-the-line" immunity.
¶ 26. The special relationship created by section 71-3-7 accomplishes two purposes: first, it prevents a general contractor from dodging liability by subcontracting with financially irresponsible employers; secondly, it protects the employees of financially irresponsible subcontractors.[5]Mills, 56 So.2d at 485. These policy concerns will not be served if a subcontractor is allowed to evade liability under the Act. We do not see how the Act, which was designed with the laudable overarching purpose of protecting injured employees, could be so construed as to allow a subcontractor, who would otherwise be liable under the Act, to avoid the mandates imposed by the Act merely because a general contractor up the line has fulfilled its duties under the Act. The purpose of section 71-3-7 is to ensure that employees are paid for injuries, and to ensure that employers do not escape liability.[6] Its purpose is not to give subcontractors a free ride merely because of their status as subcontractors.
¶ 27. The Act creates no special relationship for the subcontractor as it does for the general contractor. The subcontractor's liability is not contingent on the failure of a general contractor to provide coverage for the subcontractor's employees. Rather, the subcontractor's liability for securing coverage for its employees is immediate, if the subcontractor is subject to the Act. See Dunn, § 18 (when the subcontractor is independently subject to the Act because it employs five or more employees, "the general rule is that the liability of the subcontractor is regarded as *922 primary and that of the contractor is secondary only. . . ."). Since the Act provides no special exemption from the requirements of the Act for a subcontractor, the subcontractor must be subject to the same conditions as any other employer. If the subcontractor employs five or more employees, it must secure workers' compensation coverage. Miss.Code Ann. § 71-3-5. If an employee of the subcontractor suffers accidental injury in the course and scope of his employment, the subcontractor must pay benefits. Id. at § 71-3-7. If the subcontractor fails to secure coverage as required by the Act, the subcontractor loses the benefits of exclusivity. Id. at § 71-3-9.[7] These provisions apply to "every employer": a general contractor which failed to secure coverage for the subcontractor's employees would likewise lose the benefits of exclusivity if the subcontractor had first failed to secure coverage.
¶ 28. Fowler Trucking argues that "where any employer secures payment of compensation, all employers are immune." We do not find support for this position in the language of the statute. As previously quoted at greater length, section 71-3-7 provides that the liability of "an employer" to pay workers' compensation immunizes "such employer" from all other liability to the employee. The statute does not state that the liability of an employer immunizes "all employers" from liability to the employee. Fowler Trucking further contended, at oral argument, that if a general contractor provides coverage for the subcontractor's employees, the subcontractor will always be immune, regardless of whether the subcontractor complied with the Act. Fowler Trucking argues that this is an acceptable proposition because, as a practical matter, wise general contractors will require subcontractors to provide coverage for the subcontractor's employees. Thus, while the Act will not require subcontractors to provide coverage, they will be required to do so by contract. We do not agree. Clearly, this proposition would require us to carve out a new exception in the Act specifically for subcontractors. We also do not accept the proposition that immunity may somehow flow from a contractual relationship. From our reading of Richmond, immunity extends from the statutory relationship between the parties, not from any contractual agreement between them.
¶ 29. We are mindful of the line of "dual employment" cases handed down by the Mississippi Supreme Court. These cases have held that "when an employee is engaged in the service of two (2) employers in relation to the same act (dual employment), both employers are exempt from common law liability, although only one of them has actually provided workmen's compensation insurance." Ray v. Babcock, 388 So.2d 166, 167 (Miss.1980) (citing Robertson v. Stroup, 254 Miss. 118, 180 So.2d 617 (1965)). While this analogy appears attractive, we note that the supreme court has not followed this line of reasoning by merely ruling that the subcontractor and statutory employer are "dual employers" in an "up-the-line" situation. Rather, the court has coupled immunity with the statutory obligation to secure compensation imposed by section 71-3-7 on direct and statutory employers. Accordingly, we decline to extend the reasoning of the dual employment cases to a relationship between a statutory employer and a subcontractor in "down-the-line" situations when the subcontractor has failed to secure coverage as required by the Act. Our conclusion is by no means novel; a number of courts have declined to accept *923 "down-the-line" immunity. See, e.g., Zocco v. United States, 791 F.Supp. 595, 605 (E.D.N.C.1992) (holding that the purpose of the North Carolina statute equivalent to Miss.Code Ann. section 71-3-7 was "to protect employees from financially irresponsible subcontractors. . . . In light of this policy, it would seem odd for the legislature to have intended to reward such irresponsibility with immunity from civil liability"); Baldwin v. Wrecking Corp., 464 F.Supp. 185, 188 (W.D.Vir.1979) (holding that "the clear language of [the Virginia Workmen's Compensation Act] demands that every employer insure the compensation of employees; the mere fact that plaintiff had a statutory employer who has complied with the Act does not excuse a subcontractor employer from its duty to secure insurance"); Matthews v. G & B Trucking, Inc., 987 S.W.2d 328, 330 (Ky. Ct.App.1998) (holding that the Kentucky Workers' Compensation Act was designed to "ensure that an injured employee will be able to collect benefits, even if the worker's immediate employer has failed to obtain coverage. These sections were not intended to insulate the immediate employer from liability if it has failed to obtain coverage"); Llewellyn v. Smith, 593 P.2d 771, 772 (Okla.1979) (holding that the clear language of the Oklahoma Act gave the plaintiff/claimant "the right to maintain a common law negligence action against [the subcontractor], if, as alleged, [the subcontractor] had failed to secure compensation, as required by the Act").
¶ 30. We acknowledge that the above-cited cases, being from different jurisdictions, are distinguishable from the present controversy: as the statutory schemes governing workers' compensation benefits vary greatly from state to state, so must the analyses. However, there is a common thread binding these cases together, namely, the principle that, in the absence of explicit statutory language to the contrary, it is not the province of the courts to create immunity to suit when such immunity is not expressly created by statute. This principle is expressed well in Larson's respected treatise, in which the author criticizes the judge-made "common family" immunity doctrine:
What makes this entire story doubly depressing is that at every point, on top of all the other errors committed by the courts, there is the cardinal sin of forgetting the pervading rule that valuable common-law rights shall not be deemed destroyed by a statute except by clear language. There is something almost indecent in the alacrity and zest with which some courts, armed only with a metaphor and perhaps a sheaf of inapplicable precedents, sally forth to slash down substantive legal remedies that have existed for centuries for the protection of the injured and the allocation of the burden to the wrongdoer.
If the legislature chooses, on grounds of policy, to destroy some of these rights as part of the total treatment of industrial injury, that is another matter. . . . [b]ut the very fact that some states have expressly undertaken this extension of immunity by statute is one of the strongest arguments against implying a similar extension of immunity when the legislature has chosen not to adopt the language creating the broader immunity.
6 LARSON, WORKMEN'S COMPENSATION LAW § 111, 54 (1952).
¶ 31. Similarly, we are loathe to strip Lamar of a valuable right when there is no clear statutory language that would authorize such action on our part. Furthermore, we must presume that, due to the absence of language granting immunity to a party such as Fowler Trucking, it was not the legislature's intent to award such immunity. It would not have been difficult *924 for the legislature to adopt language creating broader immunity. For example, the federal Longshore and Harbor Workers' Compensation Act provides, in pertinent part:
In the case of an employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and be required to secure the payment of compensation. A subcontractor shall not be deemed to have failed to secure the payment of compensation if the contractor has provided insurance for such compensation for the benefit of the subcontractor.

33 U.S.C.A. § 904(a) (2005) (emphasis added). However, as the Mississippi Act makes no such provision, we must assume that it was the legislative intent not to create the broader immunity Fowler Trucking claims it should enjoy.
C. Whether Lamar elected to "claim compensation" under section 71-3-9.
¶ 32. Fowler Trucking argues that, even if it is assumed that a noncompliant subcontractor could be held liable in tort, Lamar should not be entitled to sue in this instance because she has already elected to receive compensation benefits. Under the facts of this case, we agree.
¶ 33. On appeal, Lamar argues that "the Circuit Court was simply wrong in deciding this case on an election-of-remedies defense that was abandoned as meritless even by Appellee."[8] According to Lamar, the beneficiaries made no election because "Golden Timber, Inc., voluntarily paid workers compensation death benefits" to the beneficiaries. Lamar cites Judge Leslie Southwick's concurring opinion in Goodman v. Coast Materials Co., 858 So.2d 923 (Miss.Ct.App.2003), which provides, in relevant part,
What is necessary [to constitute an election] is that the employee seek to have the Commission resolve a contested claim. It is not sufficient that notice of injury is filed and benefits are paid. The record here reveals no petition to controvert but only a notice of injury, from which the employer without disputing the matter paid benefits. The right to bring this suit has not been forfeited.
Id. at 930(¶ 31). With this language as background, Lamar contends that "no Petition to Controvert or other pleadings initiating a compensation claim was filed by Mr. Bobo's heir, nor was there any affirmative action taken by his heir whereby she requested or demanded any workers' compensation payment." Therefore, posits Lamar, no election was made.
¶ 34. Lamar admits, however, that Golden Timber would be entitled to recoup from any recovery in this tort action the benefits already paid to Lamar. This is possible, and even mandatory, Lamar contends, through the provisions of Mississippi Code Annotated section 71-3-71 (Rev. 2000), which provides, in relevant part,
The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or *925 death, but the employer or his insurer shall be entitled to reasonable notice and opportunity to join in any such action or may intervene therein. If such employer or insurer join in such action, they shall be entitled to repayment of the amount paid by them as compensation and medical expenses from the net proceeds of such action. . . .
Lamar argues that, because Fowler Trucking failed to secure insurance coverage as required by section 71-3-7, it in effect becomes "any other party" under section 71-3-71, and that receiving compensation benefits from a statutory employer therefore does not bar Lamar from bringing a separate action against Fowler Trucking as "any other party." In support of this proposition, Lamar cites cases decided by our courts where an employee of a subcontractor was allowed to sue other subcontractors on the same job as "any other party" under section 71-3-71. Furthermore, Lamar argues that Golden Timber, pursuant to section 71-3-71, would be entitled to recoup its benefits paid to Lamar from any amount Lamar recovers from Fowler Trucking as "any other party."
¶ 35. Fowler Trucking counters that, pursuant to section 71-3-9, Lamar must choose either to sue in tort, or to claim compensation benefits, but that "the statute does not permit both." Continuing, Fowler Trucking argues that, because a first report of injury was filed, and Lamar accepted benefits paid by Golden Timber, she is barred from now pursuing a common law tort claim against Fowler Trucking.[9]
¶ 36. We agree with Fowler Trucking and find that Lamar's argument would misplace the burden on Golden Timber to recoup the benefits paid to Lamar. Section 71-3-9 provides:
[I]f an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter or to maintain an action at law for damages on account of such injury or death.
This is admittedly the section whereby Lamar claims to derive her ability to sue Fowler Trucking in tort. Clearly, this language provides that a plaintiff/claimant may sue a non-compliant employer in tort, or may claim compensation benefits, but not both. In the instant case, Lamar has been paid and has accepted compensation benefits, and is also suing Fowler Trucking in tort. While Lamar claims that Golden Timber will be able to recoup "every penny" of compensation benefits paid, we find that, pursuant to section 71-3-9, the burden is not on Golden Timber to recoup benefits already paid, but on Lamar to choose whether she will accept benefits or sue in tort. She cannot take both, and then place the burden on Golden Timber to recoup the benefits already paid.[10] While we have no case law which addresses what actions constitute an election under section 71-3-9, we find that Lamar elected to accept the compensation benefits by not tendering the benefits back to Golden Timber before she filed her common law suit against Fowler Trucking.
*926 ¶ 37. We recognize Lamar's argument that Golden Timber was allegedly attempting to force an election of remedies by voluntarily paying compensation benefits to Lamar. Therefore, we do not hold that a plaintiff/claimant is required to immediately return or refuse payment of benefits to avoid having made an election. However, it is clear that if a plaintiff/claimant accepts benefits, and then files a common law tort action against her employer, she has received the benefit of both, as opposed to making an election. This is so because the clear language of section 71-3-9 allows a plaintiff/claimant either to "claim compensation," or to "maintain an action at law." (emphasis added). The statute does not state that a plaintiff/claimant may claim compensation, recover from an action at law, and then repay benefits. Rather, the plaintiff/claimant must choose whether to claim compensation, or to maintain a lawsuit. Thus, the retention of compensation benefits by a plaintiff/claimant constitutes a claim of compensation when the plaintiff/claimant files a common law action against her employer.
¶ 38. Furthermore, we find that Lamar has misplaced her reliance on section 71-3-71 because Fowler Trucking cannot be "any other party" as contemplated by the statute. The Mississippi Supreme Court has made clear that "an employer . . . is not a third party within the meaning of the act." Sawyer v. Dependents of Head, 510 So.2d 472, 478 (Miss.1987); see also Brown v. Williams, 504 So.2d 1188, 1192 (Miss. 1987) (holding that the question of tort liability against a contractor is "resolved by a determination of whether or not [the contractor] is liable as an employer under the Mississippi Workers' Compensation Act, i.e., Miss.Code Ann. § 71-3-7 (1972), rather than as a third party"). It is undisputed that Fowler Trucking, having five or more employees on the date of Bobo's accident, was his "employer" within the meaning of the Act. See § 71-3-5. The injuries Bobo sustained were compensable under the Act, and Lamar only derives her authority to sue Fowler Trucking from section 71-3-9, which allows a plaintiff/claimant to sue a non-compliant employer in tort. Thus, Lamar cannot bring suit acknowledging Fowler Trucking to be Bobo's "employer," and concurrently claim that Fowler Trucking is "any other party" under section 71-3-71. Because Lamar's lawsuit is only authorized by section 71-3-9, Lamar is subject to the choice of remedies provision in that section.
¶ 39. Lamar argues that Judge Southwick's concurring opinion in Goodman means that she must actually file a petition to controvert to constitute an election under section 71-3-9. We, however, find Goodman to be distinguishable from the instant case. Goodman involved a common law suit for an intentional tort filed against a co-employee. Goodman, 858 So.2d at 923-24 (¶¶ 2-4). Thus, unlike the instant action, the lawsuit in Goodman was not brought under section 71-3-9, but instead was brought outside the Act entirely. Therefore, the election of remedies provision of section 71-3-9 did not come into play. Our Court addressed a similar fact situation to Goodman in Davis v. Pioneer, Inc., 834 So.2d 739 (Miss.Ct.App.2003). Davis, like Goodman, involved an employee who had been voluntarily paid compensation benefits by his employer, but had later filed a common law intentional tort suit against a co-employee. Id. at 740 (¶¶ 2-3). On the issue of whether the employee was barred from filing an intentional tort suit because he had accepted compensation benefits, we held that:
[The employee] has not filed a petition to controvert with the Workers' Compensation Commission. However, he has received workers' compensation medical benefits. Although the procreant *927 source of these benefits is not entirely clear from the record, apparently, he received these benefits as a result of the employer's filing the statutory notice required by Mississippi Code Annotated section 71-3-67 (Rev.2000). Nevertheless, in our opinion, receipt of these medical benefits does not preclude compensation for the damages that are not compensable under the Act because they are alleged to have been caused by wilful and intentional acts. The damages stemming from the assault and battery are not compensable under the Act because they stem from a wilful and intentional act, not a negligent or grossly negligent act.
Id. at 743(¶ 13) (citing Blailock v. O'Bannon, 795 So.2d 533, 535(¶ 6) (Miss.2001) (emphasis added)). Thus, the holding of Davis is that the receipt of compensation benefits does not preclude an employee from filing a separate action for an intentional tort, which falls outside of the Act.
¶ 40. However, the situation is different where, as in the instant action, the plaintiff/claimant files a common law action for an action which is compensable under the Act. In the instant case, Lamar has made no allegation that Bobo was injured by an intentional tort. Rather, the entire basis of Lamar's complaint is that Fowler Trucking and/or its employees acted negligently, thereby proximately causing Bobo's death. These are acts which are undeniably compensable under the Workers' Compensation Act. Because Bobo's injuries and tragic death are compensable, Lamar is still subject to the Act, which allows her to proceed in tort only under section 71-3-9, because Fowler Trucking failed to secure its statutorily-required coverage. Unlike the plaintiff/claimant in Davis, Lamar is therefore subject to the election of remedies provision of section 71-3-9.
¶ 41. Accordingly, we affirm the judgment of the circuit court.
¶ 42. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER AND ISHEE, JJ., CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY. SOUTHWICK, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS AND ROBERTS, JJ.
SOUTHWICK, J., CONCURRING:
¶ 43. With respect for my colleagues in the majority, I disagree with their conclusion that this subcontractor would be liable in tort but for the fact that the heirs of the decedent elected to accept death benefits under the Workers' Compensation Act. I take no position on the issue of election, and instead analyze the immunity issue as a sufficient basis to reach today's result.
¶ 44. In summary, I conclude that a subcontractor who has not ignored its financial obligations for insurance but instead has assured that it and therefore its employees are named as additional insureds in a policy procured by the general contractor, is entitled to the immunity from tort that arises from compliance with the workers' compensation statutes. In my view, the Mississippi statutes establish a scheme of protection in which the contractor is the primary insurer for the injuries of the workers of subcontractors. A subcontractor may legally provide that protection instead. In certain situations, if either secures the workers' compensation protection, both the general and the subcontractor are entitled to the exclusive remedy protections.
*928 ¶ 45. As a predicate to my analysis, though, I acknowledge that these statutes could be interpreted differently. Workers' compensation law could be seen as creating a universe of bargains in which only the employer who must and actually does provide insurance is protected from tort liability to an employee who must by statute accept the insurance benefits as the limit of recovery in case of injury. If a contractor did not secure coverage, or even if it did, was not statutorily liable because some more immediate employer of the worker did so, that contractor would remain liable in tort if someone for whom it is responsible negligently contributed to the injury. In my view, that potential understanding of workers' compensation principles has been definitively rejected. See Doubleday v. Boyd Constr., 418 So.2d 823, 826 (Miss.1982). However, even in the Mississippi workers' compensation universe as I understand it, not everyone connected in some way to a job site on which an injury to a covered employee occurs would be protected by the exclusive remedy provision. There are many actors whose liability must be independently analyzed.
(1) United States Supreme Court analysis
¶ 46. The federal Longshoreman and Harbor Workers' Compensation Act (LHWCA) creates a compensation scheme for covered workers that is quite similar to workers' compensation laws. The Act has a provision that "[i]n the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment." 33 U.S.C. § 904(a) (2006). Further, the "liability of an employer . . . shall be exclusive and in place of all other liability . . . except that if an employer fails to secure payment of compensation as required by this Act," the employee may elect to claim under the act or sue in tort. 33 U.S.C. § 905(a) (2006). A Mississippi statute has nearly identical language. Miss.Code Ann. §§ 71-3-7, -9 (Rev.2000).
¶ 47. The U.S. Supreme Court considered whether the governmental agency responsible for overseeing the construction of the Washington, D.C. subway system (the Metro) and who engaged contractors for the construction, was entitled to immunity in tort when it provided the workers' compensation insurance under the LHWCA. Washington Metro. Transit Auth. v. Johnson, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984). The court of appeals had determined that since the governmental agency had voluntarily preempted its subcontractors from acquiring the insurance, that the Metro was not entitled to the immunity. Id. at 931, 104 S.Ct. 2827. The dispute was whether the Metro was an "employer" under the LHWCA entitled to the immunity from suit in tort. A Supreme Court majority found that it was, while three dissenters disagreed. Id. at 936, 941-42, 104 S.Ct. 2827 (Rehnquist, J., dissenting).
¶ 48. What is important for us is that the Supreme Court unanimously also determined that a subcontractor would be immune if it "participated" in some way in the contractor's purchase of the insurance. Id. at 940-41, n. 14, 104 S.Ct. 2827. The subcontractors were found to have secured compensation for purposes of gaining immunity from tort suit when they provided some financial credit on their bids to the Metro to offset the cost of the insurance, and the subcontractors were named as insured parties. Id. The three dissenters stated that the Court majority "admits, as it must, that the subcontractors in this case have `secured' the payment of compensation to their employees" as required *929 under the Act; the dissenters adopted the majority's reasoning. Id. at 942, 104 S.Ct. 2827.
¶ 49. In the present case, Fowler Trucking was found to have provided money for the cost of the insurance and the company was named on the general contractor's workers' compensation policy in this way: "Thomas Fowler is an additional insured." Had this been an injury under the LHWCA, the subcontractor would be immune from tort liability. Since instead we are reviewing a suit under the almost-identically worded Mississippi Workers' Compensation Act, I now turn to that Act.
(2) Mississippi Statutes
¶ 50. In Section 71-3-7 of the Code, the Mississippi legislature created the rules for "Liability for payment of compensation." Miss.Code Ann. § 71-3-7 (Rev. 2000) (caption). The next to last sentence in the section states that "[e]very employer . . . shall be liable for and shall secure the payment to his employees" of appropriate compensation. The last sentence then states as the general rule that for "an employer who is a subcontractor, the contractor" is liable for the securing the payment. That is what happened here. There was a subcontractor. The contractor was the one "liable for" and it did secure the payment. That is the standard approach recognized by the statute, the default provision perhaps. The statute then provides that the subcontractor itself may take on that role and secure the payment.
¶ 51. Making the contractor primarily liable for the coverage is the premise in section 71-3-7 when there are contractors and subcontractors. The language of the next section of the Act should be read in that context. It gives the option to an injured worker to sue in tort "if an employer fails to secure payment of compensation as required by this chapter. . . ." Miss.Code. Ann. § 71-3-9. When a subcontractor has made certain that the contractor has coverage, the subcontractor has secured payment "as required by this chapter." I think we should leave for another dayindeed, anything said this day would be dictawhat would occur if the subcontractor did nothing towards securing coverage but fortunately a general contractor had provided insurance anyway.
(3) Doubleday, Damson and Richmond
¶ 52. We should look at the entire statute to make a common-sense interpretation, as well as a "liberal" one in light of protecting workers. Doubleday v. Boyd Const. Co., 418 So.2d 823, 826 (Miss.1982). Doubleday stated that section 71-3-7 was intended to protect employees of subcontractors who do not carry insurance. Relevant for us, the opinion defined "secured" in such as way as to encompass the concept of a contractor's requiring the subcontractor to insure its employees. Id. at 827. That definition is identical to what all justices in Washington Metropolitan Transit Authority v. Johnson concluded as to the nearly-identical federal statutory provision.
¶ 53. The specific issue being addressed in Doubleday was whether a contractor that had not itself obtained the insurance was a third party under Mississippi Code Section 71-3-71. The court said that the contractor was not a third party, because it had "secured" the insurance by contractually requiring the subcontractor to provide coverage. Id. at 826-27.
¶ 54. In a later case, a Mississippi Supreme Court justice in a concurring opinion indicated that tort suits against employers should be more widely available by more narrowly defining what was an immune employer under Mississippi Code Section 71-3-9. Nash v. Damson Oil *930 Corp., 480 So.2d 1095, 1103 (Miss.1985) (Sullivan, J., concurring). He said that when workers' compensation benefits were the sole source of "income for an injured worker, that worker would be well below the minimum subsistence level by American standards." Id. His philosophy of interpretation was to look for ways to breach the immunity that otherwise would arise under the workers' compensation statutes since the benefits were too low. He found Doubleday "demonstrably in error," and argued that it should be overruled. It was a "complete fiction" that a contractor has "secured" insurance merely by requiring a subcontractor to obtain it. Id. at 1102. In his view, if a subcontractor alone provided insurance, the contractor could always be sued in tort.
¶ 55. The majority in Damson left Doubleday intact. It found that there was no immunity because the defendant in the tort suit was not an employer under the terms of the workers' compensation statute. Id. at 1100. The Damson company was more of a premises' lessee, a status arising from its contract with the actual owner, which was the National Park Service. There was no contractor-subcontractor relationship between Damson and the company that had the coverage.
¶ 56. The majority in the final case of interest, Richmond, was responding to Justice Sullivan's Damson opinion when it made the statutory word "secure" mean less than it seemed to mean in Doubleday. Justice Sullivan in Damson wanted to make all contractors liable who did not actually pay for insurance coverage or were self-insured. The Richmond majority said that the Doubleday opinion was too focused on the word "secure" and interpreted it as a contractual obligation for someone else to obtain coverage. Richmond v. Benchmark Const. Corp., 692 So.2d 60, 63 (Miss.1997). The holding of Richmond is that a contractor who does not require a subcontractor to obtain insurance and does not itself do so remains an employer, i.e., the contractor of a subcontractor is a statutory employer and is never a third party under section 71-3-71 regardless of whether there is insurance. When it does not have insurance, though, the contractor loses its immunity under section 71-3-9, and can be sued under the statute or in tort. Id. at 63.
¶ 57. By focusing on the relation of contractor to subcontractor, Richmond was rejecting the relevance of fact issues of contractor knowledge, insistence on coverage whether in writing or orally, or other details explaining how it came to be that the subcontractor had insurance. The Court gave tort suit immunity to lucky general contractors who did nothing to assure that subcontractors' employees were protected by workers' compensation insurance, but the employees had coverage anyway. The majority in our case denies immunity in all situations even when the subcontractor was diligent, paid the policy premium, and made every effort to assure coverage, if the insurance policy was arranged by and put in the name of the general contractor. If the relationship is all that is relevant for contractor immunity when a subcontractor provides the insurance, then the relationship logically could impel subcontractor immunity when the contractor provides insurance. To the contrary, the majority in our case concludes that the only thing that provides subcontractor immunity is a subcontractor policy. The majority reaches that conclusion even though the worker is equally protected regardless of which company purchases the policy.
¶ 58. Richmond is explainable as a matter of statutory language: "the contractor shall be liable for and shall secure the payment of such compensation to employees *931 of the subcontractor, unless the subcontractor has secured such payment." Miss.Code Ann. § 71-3-7. This sentence does not say that the contractor shall "secure" the subcontractors' payments if the contractor itself decides not to have insurance. Instead, the language focuses on whether, regardless of reason, the subcontractor actually obtained coverage. The "unless" clause as analyzed in Richmond means that when there is subcontractor coverage, the contractor has no obligations. The immunities for the general contractor flow from the fact of coverage, not from whether the contractor secured it.
¶ 59. The subcontractor is in a different statutory situation. In the first part of the quoted sentence from section 71-3-7, which provides that the general contractor may secure the payment of compensation, there is no reference to the subcontractor at all. There is not, in other words, an "unless" clause for the subcontractor as there is for the contractor. The subcontractor might be entitled to immunity under the Richmond analysis if the statute had said "the subcontractor shall be liable for and shall secure the payment of such compensation to its employees, unless the contractor has secured such payment." Instead, for the subcontractor to comply with the actual language of the statute, it must be found to have performed under the last phrase of the sentence, the "unless the subcontractor has secured such payment" language. Technically, but reasonably enough, the statutory language can be read to make "secure" relevant for the actions of the subcontractor but not for the contractor.
¶ 60. We must work through the ramifications of the precedents of our higher authority. I do not think we need today to conclude that Richmond provides the same protection to subcontractors when the general contractor obtains the policy as contractors receive when the opposite occurs. Richmond held that contractors are statutory employers regardless of whether they insisted upon subcontractor insurance coverage and will always be liable as a back-up for benefits to the employees of that subcontractor. Thus, when there is insurance obtained by either the contractor or subcontractor, contractors get immunity from torts suits by employees of either.
¶ 61. Our issue is different and focuses in part on practicalities. When there are contractors and subcontractors, how do the two arrange for workers' compensation coverage and maintain their immunity? In our suit, there were closely-related companies. The two companies did not both need to provide coverage. Workers' compensation insurance is not free. The statutes should not be viewed as an insurance company relief act that require as many policies as there are companies in the workplace, else the company without insurance is without immunity from a tort suit. Indeed, the contractor's providing it is the statutorily-assumed approach. A worker does not get double recovery if his immediate employer and a general contractor both have coverage. If the subcontractor cannot gain immunity from tort suit without purchasing its own policy, then the subcontractor must always provide coverage itself or else always be liable in tort. Neither statutory language nor public policy suggests that outcome. The extra insurance policies that would be required in situations like the present one provide no benefit to the worker or to the workplace.
¶ 62. So long as the subcontractor has "secured"has meaningfully participated in the providing of insuranceit has complied with its statutory obligations and is entitled to immunity.
*932 (4) Other states
¶ 63. The majority discusses some precedents from other states. As my discussion of Washington Metropolitan Transit Authority v. Johnson indicates, there are certainly credible decisions that grant immunity to subcontractors when it is the general contractor who provides the coverage. I do not find the cases cited by the majority to be inconsistent with my position.
¶ 64. In a Virginia case, the subcontractor was found liable in tort when it had not purchased insurance when the state statute stated this:
If such employer refuses and neglects to comply with the provisions [requiring the insuring of compensation payments] . . . he shall be liable during continuance of such refusal or neglect to any employee . . . in a suit instituted by the employee against such employer to recover damages for personal injury or death by accident. . . .
Baldwin v. Wrecking Corp. of America, 464 F.Supp. 185, 187 (W.D.Va.1979). In a North Carolina case, the judge explicitly applied the result of Baldwin since the court could find no local precedents. Zocco v. United States Dept. of Army, 791 F.Supp. 595, 605 (E.D.N.C.1992). The court found that immunity for the subcontractor who did not purchase insurance would be "inconsistent with the policy underpinning [the relevant statute], which is to protect employees from financially irresponsible subcontractors. . . . In light of this policy, it would seem odd for the legislature to have intended to reward such irresponsibility with immunity from civil liability." Id.
¶ 65. In the final foreign precedent that I will discuss, a Kentucky court found that a non-paying subcontractor was exposed to a suit in tort despite that a general contractor had provided workers' compensation coverage. Matthews v. G & B Trucking, Inc., 987 S.W.2d 328 (Ky.Ct.App. 1998). Nothing in the opinion suggests that the subcontractor did anything to secure the coverage provided by the general contractor. Id. at 329.
¶ 66. As already discussed, I find that we should not decide the applicable rule when a subcontractor has acted with financial irresponsibility and an ignoring of the potential for injuries to its employees. The Virginia statute quoted in Baldwin uses the language of "refuses and neglects" to provide coverage. Fowler Trucking's conduct does not deserve any of those characterizations. Therefore, I find these foreign precedents to be factually inapplicable.
¶ 67. I would affirm on the basis that Fowler Trucking earned immunity from suit in tort by its participation in the procuring of workers' compensation insurance through its contractor. I would not rule on the election of remedies issue. Therefore, I concur in the result.
GRIFFIS AND ROBERTS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Pursuant to section 71-3-7 of the Mississippi Code, and the cases construing that section, a general contractor will become the "statutory employer" of the employee of his subcontractor under certain circumstances, requiring the general contractor to secure workers' compensation coverage for the employee and entitling the general contractor to the exclusive liability provision of Mississippi Code Annotated section 71-3-9 (Rev.2000).
[2] The United States District Court for the Southern District of Mississippi has also identified the issue of "down-the-line" immunity (from contractor to subcontractor) under the Mississippi Workers' Compensation Act as one of first impression in Mississippi. Culpepper v. Double R, Inc., 269 F.Supp.2d 739, 742 (S.D.Miss.2003).
[3] The only documents produced to support the calculations of Golden Timber were handwritten documents from February 4, 1998 to February 18, 1999, which only specifically reflected workers' compensation being deducted from Fowler Trucking on approximately ten occasions during that time period. No comparable documents were produced for 1997. We cannot find that the documentation of sporadic deductions for the latter period is sufficient to contradict the sworn statements of Corbitt and Thomas Fowler as to the earlier period so as to create a genuine issue of material fact.
[4] In any event, we fail to see how Fowler could "indirectly secure" coverage in this case. Section 71-3-75 of the Mississippi Code provides three mechanisms for security of payment: (1) by a carrier authorized to insure such liability in this state; (2) by exemption from insuring pursuant to authority from the commission; (3) and by self-insuring or pooling liabilities with other employers engaged in a common type of business under rules and regulations prescribed by the commission. Miss.Code Ann. § 71-3-75 (Rev. 2000). In this case, Golden Timber did not obtain insurance through a carrier but was a member of the Mississippi Loggers Self-Insured Fund. While one might "indirectly" pay an insurance premium in an attempt to comply with the first method, we cannot see how one may indirectly qualify as self-insured under the third method. The rules and regulations of the Mississippi Workers' Compensation Commission which were in effect at the time of this incident provide detailed requirements for employers desiring to become members of a self-insured pool. See R. Miss. WC 7 (1999 ed.). Fowler Trucking has not explained how it could "indirectly" comply with these requirements for participation in the self-insured pool. Section 71-3-9 of the Mississippi Code provides that where an "employer fails to secure payment of compensation as required by this chapter," the employee may choose to file an action at law. (Emphasis added). Because Fowler Trucking did not comply with these requirements, it cannot be considered a self-insured party under the Act.
[5] One can easily conceptualize the scenario that section 71-3-7 was designed to prevent. On any given work site, a general contractor could employ numerous subcontractors with four or fewer employees. In this scenario, the subcontractors would not be required to secure coverage for their employees under the Act. If the general contractor was not required to secure coverage for the subcontractor's employees, a situation would be created where all of the employers on the project would be able to evade liability under the Act, and none of the employees would be protected by the Act. See John R. Bradley, Statutory Employer Coverage of Subcontracting Trumps Independent Contractor Exclusion from Coverage, WORKERS' COMPENSATION PRACTICE & PROCEDURE 3-6 (1996).
[6] The policy of section 71-3-7 is made clear in Mills, in which the court held "[i]t is obvious that the purpose of the legislature was to prevent the general contractor from escaping liability by employing subcontractors who were not financially responsible and leaving the employees unprotected." Mills, 213 Miss. at 174-75, 56 So.2d 485.
[7] The non-compliant employer is also subject to criminal sanctions of up to one year in prison and up to a $1,000 fine. Miss.Code Ann. § 71-3-83 (Rev.2000).
[8] The trial court held, "[s]ince Bobo's beneficiaries benefitted from the provisions of the Mississippi Workers' Compensation Act, and they do not assert an exception under the Statute, an independent tort action cannot follow." We find no evidence that the election of remedies issue has been abandoned by Fowler Trucking. To the contrary, Fowler Trucking argues on appeal that the election of remedies provision of our Act bars Lamar's tort action.
[9] The first report of injury was filed by Fowler Trucking.
[10] Incidentally, the inference of Lamar's argument is that, if she is unsuccessful in her lawsuit against Fowler Trucking, Golden Timber will be unable to recover the benefits paid because there is no judgment from which Golden Timber can recoup its payments. In this situation, again, Lamar would have had the benefit of both a tort lawsuit and compensation benefits. Such an outcome is clearly contrary to the express language of section 71-3-9.