943 So.2d 736 (2006)
FELICIANA BANK & TRUST, Appellant
v.
MANUEL & SESSIONS, L.L.C., Appellee.
No. 2005-CA-01296-COA.
Court of Appeals of Mississippi.
November 21, 2006.
*737 Jay Max Kilpatrick, Jackson, attorney for appellant.
Bruce M. Kuehnle, Natchez, attorney for appellee.
EN BANC.
SOUTHWICK, J., for the Court.
¶ 1. A bank brought suit for damages resulting from the cutting of timber on land in which it held a deed of trust. The defendant was granted summary judgment because a deed of trust was found not to provide a security interest in timber. We disagree. Therefore we reverse and remand.

FACTS
¶ 2. Louis Owen Ducote owned approximately fifty-one acres of land in Wilkinson County, Mississippi. In 1995, Ducote borrowed $20,000 from Feliciana Bank & Trust, then in 1998 he borrowed $100,000 from the same bank. Each time he conveyed the Wilkinson County property in trust to Feliciana to secure the loan. The deeds of trust were then filed in the land records.
¶ 3. On August 19, 1999, Ducote signed a piecemeal timber sale contract with Pat Conerly Forestry Services. Under this contract Conerly was "to secure a logging contractor, to manage all logging activities, to perform all activities normally performed by a forester, to secure market price and to sell and disburse stumpage through Woodville Logging." Ducote warranted the title to the timber and agreed to hold Conerly harmless from any third party claim of ownership.
¶ 4. Woodville Logging Services is a Mississippi corporation. Tom Manuel and Jody Sessions are its principals. Woodville contracts with mills and then acts as a broker to acquire timber to be sold to the mills. The defendant's initial motion for summary judgment states that "Woodville Logging Services, Inc. is a corporation *738 owned by the Defendant, Manuel & Sessions, L.L.C." That named defendant is a limited liability company owned solely by Tom Manuel and Jody Sessions.
¶ 5. Conerly's affidavit asserted that he asked Manuel & Sessions, L.L.C. to find a mill that would purchase the Ducote timber. Conerly also asked if it could recommend a logger to cut the trees. Manuel & Sessions recommended Benjamin Groom, who regularly obtains work from Manuel and Sessions. Conerly selected the trees to be cut. Groom cut and delivered the trees to a mill. The record implies that the timber was cut in the spring of 2001. Conerly states that the mill paid Manuel & Sessions, and the money was then disbursed to Groom, Conerly, and Ducote. Ducote received $13,500 for the timber.
¶ 6. At some point after the timber was cut, Feliciana foreclosed because Ducote defaulted on the loan. Feliciana purchased the property at the foreclosure sale and later sold the property to Bryan Development Company, but Feliciana did not recover the full amount of the debt.
¶ 7. In 2002, Feliciana filed a complaint against Manuel & Sessions, arguing that it had a valid security interest in the timber on Ducote's property. Feliciana sought $60,000 under the doctrine of waste. In 2005, Manuel & Sessions filed for summary judgment, arguing that no perfected security interest in the timber existed because Feliciana did not file in accordance with the Uniform Commercial Code. After a hearing, the motion was granted. Feliciana perfected this appeal.

DISCUSSION
¶ 8. We perform a de novo review of a trial court's decision on a motion for summary judgment. Wilner v. White, 929 So.2d 315, 318 (Miss.2006). We examine all the evidence in a light favorable to the non-moving party. If the moving party carries its burden of proving that there is no dispute of material fact and that it is by law entitled to judgment, we will affirm. Id.
1. Effect of Uniform Commercial Code on timber deed of trust
¶ 9. The trial court found that a Uniform Commercial Code section had altered the long-standing efficacy of deeds of trust on land as security interests in the timber that grows on the land. The interplay of the UCC with the common law of real property is not a new issue. The UCC itself recognizes that the codified commercial law might impact on traditional real property concepts. In a provision in the section on sales, the Code provides this:
Section 75-2-107. Goods to be severed from realty; recording.
(1) [Contract for the sale of minerals or of a structure to be removed from realty].
(2) A contract for the sale apart from the land of growing crops or other things attached to realty and capable of severance without material harm thereto but not described in subsection (1) or of timber to be cut is a contract for the sale of goods within this chapter whether the subject matter is to be severed by the buyer or by the seller even though it forms part of the realty at the time of contracting, and the parties can by identification effect a present sale before severance.
(3) The provisions of this section are subject to any third party rights provided by the law relating to realty records, and the contract for sale may be executed and recorded as a document transferring an interest in land and shall then constitute notice to third parties of the *739 buyer's rights under the contract for sale.
Miss.Code Ann. § 75-2-107 (Rev.2002). How to read this section alongside other Mississippi law is one of the principal issues on this appeal.
¶ 10. In Mississippi, timber is part of the realty until cut. South Miss. Electric Power Ass'n v. J.F. Miller Timber Co., Inc., 314 So.2d 346, 348 (Miss.1975). The adoption of the Uniform Commercial Code in Mississippi and specifically the just-quoted section 75-2-107(2) altered some traditional principles. This code is a nationally-created, nationally-adopted set of statutes that after enactment by this state's legislature is to be interpreted within the entire legal environment. Pre-existing law inconsistent with the Code would be replaced; consistent law would not be.
¶ 11. A deed of trust may specifically refer to timber and create explicit obligations such as not to cut without authorization. Taylor v. Fed. Land Bank of New Orleans, 162 Miss. 653, 656, 138 So. 596, 597 (1932). Conveyances of real property, though, without further elaboration and whether the conveyance is in trust, in fee simple or otherwise, grant everything that is part of the realty. Albritton v. Williams, 198 So. 573, 574 (Miss.1940). In Albritton, several deeds of trust either specifically on timber or specifically excluding timber had been executed. Id.; Albritton v. Williams, 184 Miss. 857, 186 So. 324 (1939). The Mississippi Supreme Court held that when a deed of trust was executed "without reserving the timber, [it] thereby conveyed the timber, for ordinarily timber is a part of the land on which it stands." Albritton, 198 So. at 574. Since growing timber is part of the realty, a conveyance of the realty without excepting the timber will also convey that timber.
¶ 12. The deed of trust in issue conveyed to the trustee "the land described," as well as "improvements and appurtenances now or hereafter erected on, and fixtures," which is sufficient language to cover everything that is by law part of the realty. The Code section quoted above is "subject to any third party rights provided by the law relating to realty records. . . ." Miss.Code Ann. § 75-2-107(3) (Rev.2002). That certainly appears to be a legislative effort to make the UCC rest peaceably alongside real property law.
¶ 13. What the trial court found had undermined these long-existing rules was that in addition to the previously quoted section on sales, the Mississippi Legislature had also adopted a section that defined "standing timber that is to be cut and removed under a conveyance or contract for sale" as "goods." Miss.Code Ann. § 75-9-102(a)(44) (Rev.2002). Security interests in "goods" are created by a filing under Article 9 of the UCC. The bank argues that it complied with the financing statement filing obligations. Feliciana's compliance with the UCC filing procedures is questionable, but we conclude that a traditional deed of trust filing was sufficient.
¶ 14. The trial court in essence concluded that the Mississippi commercial code displaced the common law on the securing of interests on timber. Under that view, either a deed of trust no longer applies to timber at all, or the security is lost as soon as a conveyance or contract for sale of timber occurs. The legislature has certainly defined standing timber as personal property upon the execution of a contract for its cutting. Someone involved in that cutting may make a UCC filing to secure the interest that has been obtained. Prior to such a contract, though, the UCC does not cause timber to be classified as "goods." Absent any statutory forcing of a change in the common law, the timber prior to a contract for its cutting would *740 remain real property. The UCC does not purport to cancel the reach of a pre-existing deed of trust which at least would secure timber that is not subject to a contract for harvesting. Consequently, the most the UCC would have done is cancel the lien of a deed of trust as soon as a contract for a timber sale occurs. If cancellation is the result of the Code, there would be no lasting security over timber created by a deed of trust.
¶ 15. We conclude that the proper analysis is not one of cancellation but of priority. Historically, a deed of trust granted a security interest in all property that was part of the realty. Under the UCC, though, if a typical deed of trust is executed after a contract for the cutting of the timber has been executed but before the actual harvesting of the trees, the deed of trust will either not apply to the timber at all because the timber is now personalty, or else the deed of trust will be subordinate to a prior UCC filing. Conversely, if the deed of trust predates any contract to cut the timber, the security interest vests in timber and cannot be divested simply by a contract for sale. Again, the matter is one of priority. A related statute makes clear that security interests in crops and fixtures filed under real property law remain valid encumbrances, but that competing security interests created under Article 9 of the UCC create issues of priority. Miss.Code Ann. § 75-9-334 (Rev.2002). Similarly, the previously quoted section on sales relating to timber recognizes the continuing effect of real property rules when it states that timber sales under the UCC "are subject to any third party rights provided by the law relating to realty records. . . ." Miss.Code Ann. § 75-2-107(3).
¶ 16. The bank had a perfected security interest in the timber. The rights of any subsequent purchasers of that timber were subordinate to the interest of the bank. The bank's failure to perfect its interests under the UCC was irrelevant to its right to remain secure.
2. Mortgagee's cause of action for waste
¶ 17. Since Feliciana had a recorded security interest in the timber, the next issue is whether it has a cause of action for the cutting. In one precedent involving the Federal Land Bank, the court said that a "stranger who enters upon mortgaged land, and cuts and removes timber therefrom without the consent of the mortgagee, and thereby destroys or materially impairs the value of the security, is liable to the mortgagee" for the value of the timber removed. Taylor, 162 Miss. at 656, 138 So. at 597. Loss of value is shown by "proof that at a foreclosure sale the mortgaged property brought less than the mortgage debt." Id. The total value of the Taylor timber was $300. The timber cutters paid the delinquent taxes of $92 on the property and paid the remaining $208 to the bank. Taylor, 162 Miss. at 656-57, 138 So. at 597. The removed timber materially impaired the value of the security and the bank was entitled to the entire $300 from the timber cutters. Id.
¶ 18. Feliciana also cites a precedent in which we found that individuals who held a recorded option to purchase real property, could after exercising the option bring a claim for waste against the entity who cut the timber without their permission. McCorkle v. LouMiss Timber Co., 760 So.2d 845, 853 (Miss.Ct.App.2000). That precedent may be exceptional in its allowing those who had executory or contingent interests to subject owners of fee interests and their assigns to impeachment for waste. Still, both McCorkle and Taylor recognize that owners of certain recorded interests in real property may, after coming *741 into possession, claim loss of value resulting from timber having been earlier cut without their consent. This principle is consistent with the rule that a mortgagee who had not foreclosed could not sue a trespasser who had taken turpentine from the secured property. Farmers' Loan & Trust Co. v. Avera, 7 So. 358 (Miss.1890). Under Taylor, creditors with secured interests may bring suit for the value of timber cut from the property if after a foreclosure sale there is a shortfall. Considering that $13,500 was paid for the timber and Feliciana did have a shortfall, we find no question that cutting the timber diminished Feliciana's security.
¶ 19. In summary, the deed of trust was recorded at the time of the timber cutting, and the value of the security was diminished by taking timber. Buy from any owner, then cut and run are not proper practices for the timber industry. Once Feliciana foreclosed on its recorded deed of trust, it could bring suit for devaluation of its recorded security.
3. Action for waste against Manuel & Sessions
¶ 20. Whether a claim for waste exists against this defendant, Manuel & Sessions, is the final issue. The defendant's role in the cutting is unclear. Conerly asserted that the landowner Ducote contracted with him to cut the timber. Conerly then contacted Manuel & Sessions because it had a contract with a mill where Conerly wished to sell this timber. Manuel & Sessions allegedly agreed to allow the timber to be sold to a mill under its contract. Conerly indicated that the company recommended using a logger named Benjamin Groom. Conerly followed the recommendation.
¶ 21. Slightly differently, Manuel & Sessions stated that its wholly-owned subsidiary, Woodville Logging Service, actually brokered the timber to a mill with which Woodville Logging regularly did business. Woodville Logging allegedly was the one that distributed the funds to the landowner Ducote, to Conerly, and to Groom. Conerly's affidavit said it was Manuel & Sessions that had a "delivered price contract" with the mill. He also asserted that the mill paid Manuel & Sessions, which kept part of the proceeds and then made disbursements to the others.
¶ 22. The record contains no executed documents reflecting the defendant's agreement to engage in any transaction regarding this timber. Feliciana argues that Manuel & Sessions "was intricately involved" with logging and the sale of this timber to the mill. The defendant admittedly had a brokering function at least through its subsidiary, Woodville Logging. The company's affidavit states that neither Manuel & Sessions nor Woodville Logging ever contracted to purchase or cut, or actually cut, purchased, or had possession or title to any of the subject timber.
¶ 23. Feliciana alleges that the defendant's liability is shown by the precedent in which the Federal Land Bank foreclosed on property and then brought suit against the timber cutter. Taylor, 162 Miss. at 656, 138 So. at 596. As quoted above, "a stranger who enters upon mortgaged land, and cuts and removes timber without the consent of the mortgagee," was liable to the mortgagee for the value of the timber if the worth of the security was diminished. Id., 162 Miss. at 657, 138 So. at 597. Taylor's facts are distinguishable because its deed of trust expressly prohibited the cutting of the timber and Feliciana's did not, but that difference is immaterial since the timber was part of the property subject to the mortgage. Taylor cited only one authority for its decision, which stated that a mortgagee has a claim against a "stranger" who does *742 any act "which destroys or impairs the value of his security, although the right is conditioned upon the fact of the mortgage debt remaining still unpaid, wholly or in part." 41 C.J. Mortgages § 641 (1926), at 652. The language of Taylor and its cited authority both focus on impairing the value of the security and not on violating a specific provision of the deed of trust concerning timber cutting. Id.
¶ 24. Liability for diminishing the value of this land is evaluated under the doctrine of "waste," which is a "substantial injury done to the inheritance, by one having a limited estate, during the continuance of his estate." Moss Point Lumber Co. v. Bd. of Supervisors of Harrison County, 89 Miss. 448, 526, 42 So. 290, 300 (1906). If the Manuel & Sessions participated in a legally relevant manner in the timber cutting, then it would be a proper defendant.
¶ 25. The evidence on summary judgment supports that either the defendant or its wholly owned subsidiary brokered the timber to a mill, then distributed the proceeds. It is conceded that Manuel & Sessions, L.L.C. is a limited liability company. Its subsidiary Woodville Logging Service, Inc., is described as a Mississippi corporation with Tom Manuel and Joseph Sessions as the principals. A limited liability company may purchase, own, or otherwise hold shares in corporations. Miss.Code Ann. § 79-29-109(2)(e) (Rev.2001). If the only involvement in the timber cutting, sale, and distribution of funds by anyone with a connection to Manuel & Sessions was by its wholly owned subsidiary corporation, then the defendant would be a proper defendant only under legal principles that in rare circumstances allow the corporate entity to be ignored. If a corporation acts wrongfully, the corporation is to be sued and not its owners. To pierce the corporate veil and reach the owners takes proof that was not offered or even suggested in this case.
¶ 26. The determinative issue on this appeal is whether this defendant engaged in acts subjecting it to liability. "Waste is a tort defined as the destruction, alteration, misuse, or neglect of property by one in rightful possession to the detriment of another's interest in the property." 8 POWELL ON REAL PROPERTY § 56.01 (Wolf ed.2000). Liability for torts is shared among all who are joint tortfeasors. Whether the defendant committed a tort depends on the evidence. Either Manuel & Sessions or Woodville Logging brokered the timber. The record contains no explanation of what a timber broker does. We accept, then, that the word "broker" is to be understood in its colloquial sense as an entity that brings a buyer and seller together. Compensation is paid for the service, allegedly here out of the proceeds paid by the mill. Conerly's affidavit also states that the actual timber cutter, Benjamin Groom, was recommended by Manuel & Sessions, but there is no evidence that he was an employee or had any legally relevant connection to the defendant.
¶ 27. The actual timber cutter would be liable to a mortgagee when the cutting occurs without the latter's consent. Taylor, 138 So. at 597. A broker of the timber who had no involvement in the transaction other than to link a seller with a buyer does not clearly appear to be within Taylor's reach. However, Manuel & Sessions' role  if any  as to this timber is unclear. We have concern but not conviction that liability has not been shown. A party seeking summary judgment must prove that it is entitled to judgment as a matter of law. M.R.C.P. 56(c). When "additional facts will add clarity and a greater assurance of a just disposition on the merits," summary judgment may be denied. Hudgins v. Pensacola Constr'n Co., 630 So.2d *743 992, 993 (Miss.1994). In part because the trial judge did not rule on the basis that we are discussing, and also because of the ambiguities in the record of what the defendant did, we invoke the Hudgins suggestion and remand.
¶ 28. Whether Feliciana may recover from Manuel & Sessions remains to be shown. On remand, the trial court should determine Manuel & Sessions' factual role and then any legal responsibility for the cutting of this timber, thereby assessing whether compensable damage to this plaintiff was the result of any actions or omissions by this defendant.
¶ 29. THE JUDGMENT OF THE WILKINSON COUNTY CIRCUIT COURT IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. LEE, P.J., CONCURS IN RESULT ONLY.