## MOSLEY, et al. *v.* JONES.

No. 39696          June 13, 1955          80 So. 2d 819

726

*Beard, Pack & Ratcliff,* Laurel, for appellants.

*E. K. Collins, Ronald C. Brown,* Laurel, for appellee.

ETHRIDGE, J.

This suit for negligence involves primarily the determination of whether the principal contractors, appellants, were the statutory employers of plaintiff, so as to render them liable to him only under the Workmen's Compensation Act. We think appellant's liability is exclusively under that statute.

Appellee A. C. Jones brought this suit in the Circuit Court of Jones County, Second Judicial District, against appellants Earl Mosley and H. M. Bowers, doing business as B. & M. Construction Company, and R. L. (Sol) Coleman, defendants below. The declaration charged that

Coleman was a carpenter and an employee of defendants Mosley and Bowers; that they were building a home for Will McDaniel in the City of Laurel, and Ben Chaney was a subcontractor under Mosley and Bowers, the principal contractor, for the plastering in the McDaniel home. Jones was an employee of the subcontractor Chaney, and was working as a plasterer in the McDaniel house when he was injured on March 2, 1953, by falling from a scaffold constructed for the plasterers to work upon; that this scaffold was not properly braced, and in fact was not braced at all toward its center, and defective lumber was used in its construction; that defendant Coleman, the servant of Mosley and Bowers, built the scaffold in this manner; and that as a result of such negligent construction the scaffold fell and caused severe injuries to plaintiff for which damages were sought. Coleman's answer denied that the scaffold was improperly constructed, and pleaded that plaintiff's fall was produced by plaintiff and his fellow plasterers overloading the scaffold; that Jones' own negligence in so doing was the sole, proximate cause of his injuries; and that if there were any defects in the scaffold, the same were patent and obvious, and plaintiff assumed any risks from them.

Defendants Mosley and Bowers filed a separate answer which denied that Chaney was the plastering subcontractor on the McDaniel job, and denied that Jones was working for Chaney. Their answer asserted that both Chaney and Jones were employees of Mosley and Bowers; that plaintiff's injuries were incurred by his knowingly overloading the scaffold on which he and other plasterers were working; and that his own negligence was the sole, proximate cause of his injuries. As a special defense, Mosley and Bowers further pleaded that they were employers of Jones within the provisions of the Workmen's Compensation Act; that if he were not their employee, Jones was an employee of a subcontractor, Chaney, and Mosley and Bowers were his statutory employers; that they had secured payment of compensation

for him as their employee by the purchase of a compensation insurance policy; that plaintiff's injuries arose out of and in the course of his employment; and that his sole and exclusive remedy was under the provisions of the Workmen's Compensation Act.

After a trial on these issues, the circuit court submitted the case to the jury, which returned a $10,000 verdict for plaintiff-appellee against all of the appellants.

The first issue is whether appellants Mosley and Bowers, doing business as the B. & M. Construction Company, are liable in a suit in tort by appellee, or whether his exclusive remedy against them is under the compensation act. The jury was warranted in finding that Jones was not an employee of Mosley and Bowers, but that he was the employee of Ben Chaney, who was the plastering subcontractor under the principal contractor, Mosley and Bowers. Hence the question is whether Mosley and Bowers were statutory employers of Jones under the provision of the Workmen's Compensation Act. The third paragraph of Code of 1942, Sec. 6998-04 states: "In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment. In such cases the number of employees of the subcontractor and not the contractor shall be the factor determining liability."

Section 6998-36 provides in substance that, although an employee has no claim under the Workmen's Compensation Act against an employer or insurer for injuries or death, this "shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death . . ." which would include a suit in tort for negligence of a third party.

Section 6998-05 states: "The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee . . . to recover damages at a common law or other-

wise from such employer on account of such injury or death . . ."

Under these statutes immunity from common law suits by the employee is granted to the employer. In accordance with these statutes and the great weight of authority elsewhere, we think that this immunity to suit is extended to statutory employers who come within the provisions of Section 6998-04. 2 Larson, Workmen's Compensation Law (1952), Section 72.31, p. 175, summarizes the rule and the reasons for its as follows: "Forty-one states now have 'statutory-employer' or 'contractor-under' statutes—i. e., statutes which provide that the general contractor shall be liable for compensation to the employee of an uninsured subcontractor under him, doing work which is part of the business, trade or occupation of the principal contractor. Since the general contractor is thereby, in effect, made the employer for the purposes of the compensation statute, it is obvious that he should enjoy the regular immunity of an employer from third-party suit when the facts are such that he could be made liable for compensation; and the great majority of cases have so held."

There is no substantial dispute, we think, that appellants Mosley and Bowers were statutory employers of Jones. Therefore appellee's exclusive remedy against them for the injuries which arose out of and in the course of his employment are under the Workmen's Compensation Act. This conclusion depends upon four ultimate factual issues: (1) whether Chaney was a plastering subcontractor under Mosley and Bowers; (2) whether Jones was an employee of the subcontractor Chaney; (3) whether under Section 6998-03 Chaney had regularly in his business eight or more employees when Jones was injured; and (4) whether the subcontractor Chaney had failed to secure compensation insurance for his employees.

The first two of the above stated questions must manifestly be answered in the affirmative. The overwhelm-

ing weight of. the evidence shows that Chaney was the plastering subcontractor under the principal contractor Mosley and Bowers, and that appellee Jones was the employee of Chaney. In fact, appellee's case was based on those two propositions, and appellee necessarily concedes those facts.

We also think that the third requirement stated above exists, namely, that the subcontractor Chaney had eight or more employees regularly in his business, as required by Section 6998-03. The standards for determining this issue were analyzed in Jackson v. Fly, 215 Miss. 303, 60 So. 2d 782 (1952). The test is that if by the character of the work the employer has once regularly employed eight or more persons, he remains under the compensation act even when the number employed temporarily falls below that minimum, and it is not necessary that the minimum number of workers shall be employed on the same job or at the same place. The question is determined by the character of the work in which they are employed, however brief or long, and not by the character of the employment, whether regular, casual or periodical. So if the subcontractor employs eight or more men, then the primary contractor must guarantee the payment of compensation benefits to the subcontractor's employees. In Jackson v. Fly the subcontractor was engaged in constructing four different houses for four different contractors, and his employees were distributed among those projects.

The evidence reflects that Chaney was the subcontractor of two separate jobs at the time Jones was injured at the McDaniel house, and was employing men on each project. They were the McDaniel house and the Williams Funeral Home, each with different principal contractors. He had six men working on the former, and at least four others working at the latter. Chaney testified that on both he employed around ten or eleven men. The entire context of the testimony indicates that Chaney's method of handling the Williams job was

the same which he followed at the McDaniel house. In fact, Jones had been working for Chaney at the funeral home before he was transferred to McDaniel's. Appellee's own testimony establishes that there were at least two and perhaps more men working for Chaney at the funeral home, and when these are added to his six employees at the McDaniel house, Chaney clearly was an employer of eight or more men. Although appellee did not know exactly how many were working at the Williams job, his own witness Kelly testified that he was working there, and that a total of at least four worked for Chaney at the funeral home. And although Appellants' witness Moore stated as an opinion that Chaney was not a subcontractor at the funeral home, he was next asked whether he knew whether Chaney did or did not have a subcontractor's job there, and Moore said he did not know. He also stated that he was "pushing" for Chaney on the funeral home job, and that Chaney made the arrangements for him to go to work on it. So considering all of this testimony, it is manifest that Chaney had plastering subcontractor's jobs at both the McDaniel place and Williams Funeral Home on the day Jones was injured; that Chaney was the employer of eight or more men on both of the jobs; and that under Code Sec. 6998-04 Mosley and Bowers were liable for and required to secure the payment of workmen's compensation, not only to their own employees, but to those of their subcontractors who employed eight or more men, "unless the subcontractor has secured such payment."

The fourth and remaining question, with reference to the special defense of Mosley and Bowers that they were not liable in tort because they had secured workmen's compensation covrage for plaintiff, is whether it appears from the record that Chaney had not secured compensation coverage for his own employees. Jones was asked by defendants' attorney, "Did you know then that your employer carried Workmen's Compensation Insurance?" An objection by plaintiff's attorney was overruled, and

Jones replied "He must not have had none." He was then asked whether he had been offered any workmen's compensation, and plaintiff replied "I never seen none of them about nothing — none of them never said dog to me about it." It must be remembered that plaintiff had testified that Chaney was his employer, and this conception should be related to the above questions and answers. Plaintiff's reply in effect was that Chaney must not have had any compensation insurance. Chaney himself did not specifically testify that he did not carry for his employees compensation insurance, but he claimed that he was not a subcontractor but only a foreman for Mosley and Bowers. All of the parties and the circuit judge manifestly proceeded on the idea and assumption that Chaney himself had purchased no compensation insurance for his employees. The trial judge stated that Chaney "neither was covered, nor did he elect to come within it . . . He hadn't made provisions to secure it;" and that the question was whether Chaney had eight or more employees, and if he did, Mosley and Bowers plea of exclusive liability under the compensation act would be good. In overruling the defendants' oral motion for a directed verdict at the conclusion of all of the evidence, the circuit judge stated that if Chaney had more than eight employees, Jones would come under the compensation act. But since Moore had testified that he was not employed by Chaney, he thought that whether Chaney was a subcontractor and whether he had eight or more employees were the sole questions to be submitted to the jury on defendants' special defense. However, as stated above, Moore's response to the question referred to by the circuit judge must be related to his admission that he did not know what arrangement Chaney had with the principal contractors on the funeral home job, and must be related to all of the other testimony, which shows that Chaney employed other men at the funeral home, as well as on the McDaniel project. Furthermore, plaintiff's principal instruction to the jury was based on the

assumptions that Chaney was a plastering subcontractor with less than eight employees, and that he did not have compensation insurance for his employees. On the other hand, the defendants' instruction on this question was based on the assumptions that Chaney, a subcontractor, had more than seven employees but had not purchased compensation insurance for them. So for these reasons we think that the record amply shows without dispute that Chaney had not secured workmen's compensation insurance for his own employees, and further that both plaintiff and defendants submitted the issue to the jury on that theory. So appellee is in no position here to argue that the record fails to show that Chaney had not secured such compensation insurance.

■■ For these reasons, we think that the appellants Mosley and Bowers were entitled to their requested peremptory instruction, that appellee's sole and exclusive remedy as to them is under their workmen's compensation policy, and that Mosley and Bowers are now "third parties" within the meaning of Section 6998-36, permitting injured employees to sue in tort a negligent third party.

■■ Furthermore, the record fails to show any basis of liability on the part of appellant R. L. (Sol) Coleman and any breach of duty by Coleman to appellee. In fact, appellee admitted that Coleman was under no duty to erect the scaffold for appellee and the other plasterers, and that such duty was that of Ben Chaney. On cross-examination Jones testified as follows: "Q. Why, Mr. Jones, did you, after you discovered that was a ratty scaffold, as you say, get up there? A. Well, the foreman was supposed to have been looking out for that, and when he tells you to get up there it's supposed to be safe. Q. That wasn't Mr. Mosley's foreman, was it? A. It was Ben Chaney's foreman. Q. Ben Chaney's foreman was supposed to see that those braces were under there, is that right? A. That's right. Q. That wasn't Mr. Mosley's responsibility to see that those braces were under

there, that was your foreman's responsibility? A. That was Ben Chaney's foreman's job." Moreover, this testimony of appellee is wholly consistent with his position throughout the entire trial of the case, to the effect that he was an employee of Chaney, a plastering sub-contractor. In view of appellee's admission that it was not Coleman's duty either to erect or to maintain the scaffold, but that it was the duty of Chaney, the appellee's employer, appellant Coleman was entitled to his requested peremptory instruction.

Reversed and judgment rendered for appellants.

*Roberds, P. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.