# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00246-COA

ALEXIS MAYBERRY, IN HER CAPACITY AS THE ADMINISTRATOR OF THE ESTATE OF ALEX MAYBERRY, DECEASED

APPELLANT

v.

COTTONPORT HARDWOODS AND ERNEST MOORE

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/2021 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RAYNETRA LASHELL GUSTAVIS |
| ATTORNEYS FOR APPELLEES: | MELTON JAMES WEEMS |
| | NICOLE ALISE BROUSSARD |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED - 11/08/2022 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Alex Mayberry filed a civil action against Cottonport Hardwoods LLC, BLC Trucking Inc.,[1] and Ernest Moore. The complaint alleged that while Moore, an employee of Cottonport, was loading logs onto a trailer attached to his tractor, a log fell from a "knuckleboom loader" and struck Mayberry, causing him severe and debilitating injuries. The Circuit Court of Warren County, Mississippi, granted Cottonport Hardwoods and Ernest Moore's "Renewed Joint Motion to Dismiss or Alternatively Motion for Summary

---

[1] The complaint as to BLC Trucking was dismissed by the circuit court, and BLC Trucking is not a party to this appeal.

Judgment," finding that under the facts of this case, the exclusive remedy provision of the Mississippi Workers' Compensation Law barred any recovery by Mayberry against Cottonport and Moore. Aggrieved by this decision, Mayberry appealed.[2]

## FACTS AND PROCEDURAL HISTORY

¶2. On September 14, 2015, Diamond Barge Company LLC, as grantor, conveyed all timber owned by the grantor, located and standing on the real property described therein, located in Warren County, Mississippi, to Cottonport by a "Special Warranty Timber Deed." This deed described the timber as having been acquired by Diamond Barge via a "Transfer of Timber" from Diamond Point Land Company LLC and specifically stated that it was the intent of Diamond Barge to transfer and convey to Cottonport all timber acquired from Diamond Point. The Special Warranty Timber Deed also stated that the conveyance was "specifically subject to the terms and conditions" of three specifically identified instruments recorded in Warren County, Mississippi. However, none of those three instruments were included in the record on appeal.

¶3. On February 3, 2017, MB & LB Investments LLC, as seller and/or grantor, conveyed by Warranty Timber Deed to Cottonport, as purchaser and/or grantee, with full warranty of title to certain timber "located, growing, and standing" on the real property described therein. This deed provided, however, that Cottonport would have the right to enter upon the real property and harvest the timber conveyed only until December 31, 2021.

¶4. After purchasing the timber on Davis Island from the two entities named above,

---

[2] Mayberry died during the appeal proceedings. His estate was substituted as the appellant in this case.

Cottonport contracted with BLC Trucking "to cut and haul timber to yard or to mill from yard to mill." BLC Trucking then entered into a subcontract with Kettley Trucking, Inc. to haul logs from Davis Island to lumber mills. Kettley Trucking subcontracted with Joseph West, doing business as 747 Trucking, to assist in hauling the logs. West then hired Mayberry to drive West's log truck and haul logs from Davis Island. Mayberry was injured while his truck was being loaded with logs on May 10, 2017.

¶5.     Mayberry filed for workers' compensation benefits, naming three different employers: Kettley Trucking, BLC Trucking, and Cottonport.[3] According to the administrative judge's decision, all three employers "denied the existence of a direct or statutory employment relationship" with Mayberry and thus denied liability to pay him workers' compensation benefits. Ultimately, Cottonport and BLC Trucking were voluntarily dismissed "without prejudice and without waiver of any claims, defenses or jurisdictional objections." However, the Commission found that Kettley Trucking was Mayberry's "statutory employer" and was required to pay him workers' compensation benefits under the Workers' Compensation Law.

¶6.     Mayberry subsequently filed suit for damages in Warren County Circuit Court against Cottonport, BLC Trucking, and Moore. All the defendants first filed motions to dismiss for failure to state a claim upon which relief could be granted. After a hearing on these motions, the court denied the motions to dismiss "without prejudice to the Defendants to file such Summary Judgment motions as they deem appropriate." The trial court then allowed limited discovery on the issue of whether the Mississippi Workers' Compensation Law provides the

---

[3] West could not be located, and 747 Trucking had dissolved.

plaintiff's exclusive remedy against the defendants. After discovery was complete, Cottonport filed a renewed motion in which it claimed that it was also Mayberry's statutory employer and that his claims were barred because workers' compensation coverage was his exclusive remedy against Cottonport and Moore. The trial court found the motion to be well taken and granted summary judgment in favor of Cottonport and Moore.

## STANDARD OF REVIEW

¶7.     In *Holcomb, Dunbar, Watts, Best, Masters & Golmon P.A. v. 400 South Lamar Oxford Mad Hatter Partners LLC*, 335 So. 3d 568, 572 (¶7) (Miss. 2022), the supreme court repeated the familiar standard of review for summary judgment:

> A trial court's grant or denial of summary judgment is reviewed de novo. *Hubbard v. Wansley*, 954 So. 2d 951, 956 [(¶9)] (Miss. 2007). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The evidence is viewed in the light most favorable to the nonmoving party. *Id.* "The moving party has the burden of demonstrating that [no] genuine issue of material fact[] exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." *One S. Inc. v. Hollowell*, 963 So. 2d 1156, 1160 [(¶6)] (Miss. 2007) (internal quotation marks omitted) (quoting *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1037 [(¶9)] (Miss. 2007)).

## DISCUSSION

¶8.     The general purpose and effect of Mississippi's Workers' Compensation Law, Miss. Code Ann. §§ 71-3-1 to -139 (Rev. 2021), is succinctly described in *Doubleday v. Boyd Construction Co.*, 418 So. 2d 823, 825-26 (Miss. 1982):

> In all states, workmen's compensation laws are in derogation of the common law in that they replace traditional negligence actions for a no-fault system of payment to employees and their families for job-related injuries. By the

4

exchange, the remedy of workmen's compensation benefits, insofar as the right of the employee against certain classes of persons are concerned, is exclusive and the common law remedy is abrogated.

The Workers' Compensation Law applies to employers who have five or more workers regularly employed in their business. Miss. Code Ann. § 71-3-5. For employers who provide workers' compensation insurance coverage for their workers who are injured on the job, "the liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee." Miss. Code Ann. § 71-3-9.

¶9.     The law also provides workers protection in the event that their immediate employer fails to provide workers' compensation coverage. Mississippi Code Annotated section 71-3-7(6) reads as follows:

> In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment.

In interpreting and applying this statutory provision, the supreme court stated in *Rollins v. Hinds County Sheriff's Department*, 306 So. 3d 702, 703-04 (¶7) (Miss. 2020):

> Mississippi Code Section 71-3-7(6) (Supp. 2019) provides: "[i]n the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment." The "contractor" is considered the "statutory employer of the subcontractor's employees . . . ." *Thomas* [*v. Chevron*], 212 So. 3d [58,] 61 [(¶8) (Miss. 2017)].

¶10.    In the present case, Mayberry's immediate employer, Joseph West, doing business as 747 Trucking, did not provide workers' compensation coverage. However, Mayberry made an election to pursue workers' compensation coverage from his "statutory employer." This election is described in Mississippi Code Annotated section 71-3-9 as follows:

5

(1) Except as provided under subsection (2) of this section, the liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that **if an employer fails to secure payment of compensation as required by this chapter**, an injured employee, or his legal representative in case death results from the injury, **may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death**. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.

(Emphasis added). Therefore, Mayberry may not maintain a separate action for damages against a statutory employer that provided him with workers' compensation coverage.[4] However, this "election" by Mayberry does not prevent him from seeking damages from third parties who may be responsible for his injuries. Miss. Code Ann. § 71-3-71.

¶11.    The decision as to whether Cottonport was Mayberry's "statutory employer" directs the path of this case in one of two directions. If Cottonport is Mayberry's "statutory employer," then Mayberry cannot proceed against Cottonport because workers' compensation is his exclusive remedy. Miss. Code Ann. §71-3-9. However, if Cottonport is not Mayberry's "statutory employer," Cottonport is subject to suit, and this action may continue. Miss. Code Ann. § 71-3-71.

¶12.    The administrative judge's order in the workers' compensation proceeding identified the line of contractors as "Cottonport-BLC-Kettley-West." The trial court agreed and found

---

[4] The exclusive remedy provision may also apply to other statutory employers "up-the-line" from an immediate employer where they were also required by the law to provide workers' compensation coverage. *Lamar v. Thomas Fowler Trucking Inc.*, 956 So. 2d 911, 919 (¶21) (Miss. Ct. App. 2006).

6

that Cottonport and BLC Trucking were "up-the-line" contractors and were, therefore, entitled to the exclusive remedy protection of Mississippi Code Annotated section 71-3-9 and immune from liability. On appeal, Mayberry argues that "Cottonport's ownership of the timber and timber operation on Davis Island and lack of a contract with any other higher entity for performance precludes it from 'contractor' status under 71-3-7(6)." We must take a de novo look at the facts of this case and the law to determine whether Cottonport is a "contractor" or a "subcontractor" under the facts and whether the grant of summary judgment was proper.

¶13.    In *Rodgers v. Phillips Lumber Co.*, 241 Miss. 590, 130 So. 2d 856, 857 (1961), Phillips was "in the business of manufacturing rough lumber into finished lumber." Phillips bought "most of the rough lumber from other mills." *Id*. Phillips would also buy "timber lands" and then contract with others "to cut the trees, saw them into rough lumber, and deliver it to Phillips' mill." *Id*. In this case, Phillips **bought standing timber** from the landowner, Koppers Company. *Id*. Phillips was to pay Koppers a certain sum of money, based upon the quantity of logs cuts, and measured by Koppers' employee. *Id*. Phillips then contracted with Metts, an independent contractor, "to cut the timber, haul it to Metts' mill, saw the logs into rough lumber and deliver it to Phillips' mill." *Id*.

¶14.    Rodgers, Metts' employee, was injured on this job and Metts did not carry workmen's compensation insurance. *Id*. The Mississippi Code of 1942, section 6998-04, provided in part that "[i]n the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless

7

the subcontractor has secured such payment."[5] Unable to recover from Metts, Rodgers

brought a workers' compensation claim against Phillips. *Id*. The Workers' Compensation

Commission found that Metts was an independent contractor and that Metts' employees were

not employees of Phillips. Rodgers appealed. *Id*.

¶15.    The Mississippi Supreme Court ruled:

> A concise definition of a subcontractor is given in Mississippi Workmen's Compensation, Dunn, Sec. 10, p. 7 as follows: 'A subcontractor is one who enters into a contract, express or implied, for performance of an act with a person who has already contracted for its performance, or who takes a portion of a contract from the principal or prime contractor.' *Cf. Mosley v. Jones*, 224 Miss. 725, 80 So. 2d 819[, 820 (Miss. 1955)].

> Phillips Lumber Company was the owner of the timber upon severance from the land. It was not a prime contractor–it had not already contracted for the performance of that done under its contract with Metts. Its contract with Metts was a contract, not a subcontract. We find no merit in the contention based on the last paragraph of Code, Section 6998-04.

*Id*. at 857-58. The court found that Phillips was the owner of the timber and had not

contractually obligated itself to cut and haul the timber. Therefore, when Phillips contracted

with Metts to cut and haul *its* timber, Phillips was not transferring any obligation to Metts

that Phillips had under a prior existing contract to cut and haul its timber. *Id*. In other words,

Metts was not taking "a portion of a contract from the principal or prime contractor." *Id*. The

court found that Phillips' contract with Metts was not a subcontract because there was no

prior contract. *Id*.

¶16.    We find this same reasoning in later cases. In *Nash v. Damson Oil Corp.*, 480 So. 2d

---

[5] This identical provision is now found in Mississippi Code Annotated section 71-3-7(6).

1095 (Miss.1985), Damson Oil Corporation was an "operating lessee under an oil and gas lease" of an oil well in Wayne County, Mississippi. *Id*. at 1096. Damson entered into a contract with Trigger Contractors Inc., an independent contractor, to do "certain work with respect to oil or gas wells, as well as any other services" which Damson might require. *Id*. The contract with Damson required Trigger to carry workers' compensation insurance coverage for its employees, which Trigger in turn procured. *Id*. at 1097. Nash, an employee of Trigger, was performing work on one of Damson's wells and was being directed as to how to perform the work by Damson's employee. *Id*. Nash was injured by Damson's employee's negligence. *Id*. Nash received compensation from Trigger's insurance carrier but later sued Damson for its employee's negligence. *Id*. at 1097-98. Damson moved to dismiss Nash's complaint claiming that it was an employer and was entitled to the exclusive-remedy protection of the Mississippi Workers' Compensation Law, Mississippi Code Annotated section 71-3-9. *Id*. at 1098. Although Damson was not the owner of the land upon which it operated an oil well, Damson was still found not to be a "contractor" entitled to the exclusive protection of the Mississippi Workers' Compensation Law. *Id*. at 1100. In making this determination, the supreme court ruled:

> Because of the operative language employed in Section 71-3-7, counsel seek to lead us into a linguistic bog surely attendant upon any effort to define with precision such terms as "contractor" and "subcontractor" and "independent contractor." Regretably, these terms have not been statutorily defined in a way that is helpful here. Damson correctly notes that every subcontractor is an independent contractor but an independent contractor may or may not be a subcontractor. Dunn, *Mississippi Workmen's Compensation*, § 10 (3d ed. 1982). The point, however, does not carry us far. Without question Damson is a contractor in a generic sense. Damson has a contractual relationship with the owners of the land imposing various duties and obligations upon each.

Damson is also a contractor in the sense that it has a contract with Trigger imposing obligations and duties upon each. **The operative point is that Damson's interest, use and activities with respect to the premises are wholly different in nature from those of one ordinarily considered a general or prime contractor-the sort of contractor we believe contemplated by Doubleday,** *see* **Section 71-3-7**. Damson's position with respect to the premises is similar to that of Mississippi Power & Light Company in *Falls* and unlike that of Boyd Construction Co. in *Doubleday*. **Damson is an operator or even in a sense an owner pro hac vice, a lessee. On the other hand, Damson lies outside the common understanding of such terms as "prime contractor" or "general contractor". Therefore, Damson is not the sort of "contractor" within the meaning and contemplation of Section 71-3-7**.

*Id*. at 110 (emphasis added) (footnote omitted).[6]

¶17.     In *Thomas v. Chevron U.S.A. Inc.*, 212 So. 3d 58 (Miss. 2017), Thomas was employed by Bragg Investment Co., d/b/a American Plant Services Inc. (APS) as a maintenance worker at Chevron's petroleum refinery in Pascagoula, Mississippi. *Id*. at 59, (¶1). In 2004, APS entered into a contract with Chevron to "perform maintenance and other specialized services at [Chevron's] refinery." *Id*. at 59 (¶3). While in the original contract Chevron had required that APS obtain workers' compensation coverage for its workers, in June 2010, the contract was amended, and Chevron agreed to provide workers' compensation insurance for all APS employees. *Id*. Thomas was injured on the job on October 13, 2012, when a Chevron employee opened a valve that "expelled hot steam, coke, and water onto Thomas, burning most of his body." *Id*. at (¶2). Thomas began collecting workers' compensation benefits provided by Chevron. Thomas received benefits totaling $978,734. *Id*. at (¶4).

¶18.     Thomas and his wife then sued Chevron and its employee for the same injuries. *Id*.

---

[6] Mississippi Code Annotated section "71-3-7" cited in this quoted language is identical to section 71-3-7(6), which is applicable to the present case.

at 59-60 (¶4). Chevron moved for summary judgment on the basis that it was Thomas' "statutory employer entitled to immunity from suit under the MWCA's exclusive remedy provision." *Id*. at 60 (¶6). The trial court granted Chevron's motion, and Thomas appealed. On appeal, the supreme court reversed the trial court's decision, ruling:

> In sum, this Court never has treated the owner of land as a prime or general contractor for purposes of the Workers' Compensation Act. Here, Chevron was the owner of the plant. The fact that Chevron contracted with APS for certain maintenance and other work does not change Chevron's status as an owner. APS is the chief or prime contractor. **A "chief or prime contractor" is defined as one "who has a contract with the owner of a project or job, and has full responsibility for its completion."**
>
> Chevron had no duty as an employer or contractor to secure workers' compensation insurance and its act of voluntarily purchasing coverage does not change its status. Chevron in this case is not immune from a negligence action and thus is subject to Thomas's tort claim as "any other party" pursuant to Mississippi Code Section 71-3-71. *Doubleday*, 418 So. 2d [at] 827.

*Id*. at 64-65 (¶¶22-23) (emphasis added) (footnote omitted).

¶19. In *Rollins v. Hinds County Sheriff's Department*, 306 So. 3d 702, 703 (¶1) (Miss. 2020), Hinds County contracted with Quality Choice Correctional Healthcare to provide medical care for inmates. Delorise Rollins was hired by Quality Choice as a nurse at the Hinds County Detention Center. *Id*. at 703 (¶1). Rollins was injured on the job and sought workers' compensation benefits for her injuries. *Id*. Quality Choice did not carry workers' compensation coverage. *Id*. In finding that the Hinds County Sheriff's Department was not Rollins' statutory employer, the supreme court explained:

> Presiding Judge Wilson, writing for the Court of Appeals, correctly ruled:
>
> We affirm the judgment of the Commission because it correctly determined that HCSD was not a contractor and that Quality Choice was not a

11

subcontractor. In *Thomas*, 212 So. 3d at 62-64 (¶¶13-21), the Supreme Court discussed all the significant precedents applying subsection 71-3-7(6), and there is no need for us to cover all of that ground again today. **The key point of these decisions is that a party is considered a "contractor" and a "statutory employer" only if it is within "the common understanding of such terms as 'prime contractor' or 'general contractor.'"** *Id.* at 63 (¶15) (quoting *Nash v. Damson Oil Corp.*, 480 So. 2d 1095, 1100 (Miss. 1985)). The Supreme Court further explained that a property owner does not become a "contractor" just because it contracts with another entity to do work on its premises. *Id.* at 64 (¶22). **Rather, a "chief or prime contractor is defined as one who has a contract with the owner of a project or job, and has full responsibility for its completion."** *Id.* (emphasis added) (quotation marks omitted). **In this case, Hinds County contracted directly with Quality Choice to provide comprehensive medical care for inmates. That is the only contract in the record in this case. Neither Hinds County nor HCSD had a "contract" with anyone else. There was only a single contract between Hinds County and Quality Choice. By definition, that is not a "subcontract."** Therefore, Quality Choice was not a "subcontractor," and HCSD was not a "contractor" or Rollins's statutory employer.

*Id.* at 704 (¶9) (emphasis added).

¶20. In applying the reasoning from these cases to the facts of the present case, we find that Cottonport does not come within "the common understanding of such terms as 'prime contractor' or 'general contractor.'" Cottonport owned the standing timber and was the owner of the project to harvest the timber on the Davis Island tracts. Cottonport had paid the grantors for the timber, and the grantors had no further financial interest in the harvesting of the timber. Cottonport had no obligation to the grantors to cut a single tree. The harvest of the timber was solely for the profit of Cottonport.

¶21. Perhaps more importantly, Cottonport contracted with BLC Trucking to cut and haul its timber. This was the prime contract and BLC Trucking was the "prime" or "general" contractor. As in *Rollins*, just because Cottonport contracted with BLC Trucking to cut and

haul **its** timber, Cottonport does not thereby become a "contractor."[7] Cottonport was under no obligation to cut and haul trees. BLC Trucking had a contract with Cottonport, who was the owner of the timber-cutting project, and BLC Trucking had full responsibility for its completion. BLC Trucking, as the prime or general contractor, then entered into a subcontract with Kettley Trucking, which entered into a subcontract with West, who hired Mayberry.

## CONCLUSION

¶22. Cottonport was not a statutory employer of Mayberry and is not entitled to the exclusive remedy immunity provided by Mississippi Code Annotated section 71-3-9. Instead, Cottonport is a third party that is subject to suit pursuant to Mississippi Code Annotated section 71-3-7. The trial court's grant of summary judgment as to Cottonport and Moore is hereby reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

¶23. **REVERSED AND REMANDED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, McCARTY AND SMITH, JJ.**

**CARLTON, P.J., DISSENTING:**

---

[7] The most important distinguishing factor between the case at hand and the *Hibbler* case discussed by the dissent is that in *Hibbler*, Ingalls was not only the owner of property but it also had a contract with the United States Navy to build a ship. *Hibbler v. Ingalls Shipbuilding Shipyard*, 298 So. 3d 1022, 1024 (¶2) (Miss. Ct. App. 2019). The same is not true in the case at hand. Cottonport did not have a contract with any other entity to do work on the property. Cottonport was merely the owner of the standing timber and the owner of the project to harvest the timber.

¶24. Because I would affirm the circuit court's grant of summary judgment, I respectfully dissent from the majority's opinion. After examining the record and considering the specific facts of the present case, I find that the timber deeds before us constitute a prime contract. I further find that Cottonport was a prime contractor and, therefore, entitled to the benefit of the Workers' Compensation Law's exclusive remedy provision through up-the-line immunity.

¶25. A brief review of the procedural history in this case shows that Alex Mayberry was injured on the job while hauling timber on Davis Island in Warren County, Mississippi. Mayberry filed a petition to controvert with the Mississippi Workers' Compensation Commission (Commission). After a hearing, the Commission determined that Kettley Trucking Inc. (Kettley), was Mayberry's statutory employer for workers' compensation purposes. The Commission accordingly awarded Mayberry workers' compensation benefits.

¶26. Mayberry then filed a negligence suit against Cottonport Hardwoods LLC (Cottonport), the company that held timber deeds to certain tracts of timber on Davis Island, and Earnest Moore, one of Cottonport's employees (collectively, Appellees), seeking compensatory and punitive damages as the result of his injuries. The Appellees filed a motion to dismiss or, in the alternative, for summary judgment, asserting that the exclusive-remedy defense under the Mississippi Workers' Compensation Law (MWCA) barred Mayberry from filing the negligence suit. *See* Miss. Code Ann. § 71-3-9 (Rev. 2011). After a hearing, the Warren County Circuit Court granted the Appellees' motion.

¶27. Mayberry appealed, arguing that the circuit court erred in determining that Cottonport

14

was Mayberry's statutory employer for purposes of the MWCA.

¶28. The record shows that Cottonport held two special warranty deeds granting it rights to certain tracts of timber located on Davis Island. Cottonport subcontracted with BLC Trucking Inc. (BLC Trucking) to haul the timber to various lumber yards. BLC Trucking then subcontracted with Kettley to assist in hauling the timber, and Kettley employed Joseph West d/b/a 747 Trucking. Mayberry was hired by Joseph West to haul timber. On May 10, 2017, while working on Davis Island, Mayberry was struck by a log and injured.

¶29. Mayberry filed petitions to controvert with the Commission and named three different employers and their insurance carriers: (1) Kettley and its carrier, Accident Insurance Company (AIC); (2) BLC Trucking and its carrier, Louisiana Loggers Self-Insured Fund (Louisiana Loggers); and (3) Cottonport and its carrier, AmFed National Insurance Company (AmFed).

¶30. The administrative judge (AJ) held a hearing to determine whether Mayberry was employed by one of the defendant employers as a direct or statutory employee on the date of his injury and if so, whether the employer/carrier was liable to pay him workers' compensation benefits. The AJ found as follows: Mayberry was injured while hauling logs for West; West had contracted with Kettley to perform this work; and Kettley had contracted with BLC and/or Cottonport to perform the same work. Mayberry's direct employer, West, did not have workers' compensation coverage. However, the AJ determined that Kettley "had both a contract down with West and a contract up with BLC and/or Cottonport," and therefore "Kettley/AIC became the surety for [Mayberry's] workers' compensation benefits

15

pursuant to the statutory employer provision, [Mississippi Code Annotated s]ection 71-3-7 [(Supp. 2012)]." The AJ ultimately held that Kettley was Mayberry's statutory employer on the date of his injury, and the AJ ordered Kettley and AIC to pay Mayberry workers' compensation benefits. The AJ then dismissed BLC and Cottonport as parties to the claim.

¶31. On May 5, 2020, Mayberry filed a complaint in the circuit court against Cottonport, BLC Trucking, and Moore alleging negligence, negligence per se, gross negligence, vicarious liability, and negligent infliction of emotional distress, as a result of his injuries. BLC Trucking filed a motion to dismiss and also a motion to stay discovery until the circuit court ruled on BLC Trucking's motion to dismiss. The Appellees also filed a motion to dismiss, arguing that Cottonport operated as a "statutory employer" of Mayberry under the MWCA and that this status rendered Cottonport and its employees immune from suit pursuant to the exclusivity of the MWCA.

¶32. After a hearing, the circuit court denied the motions to dismiss and granted, in part, BLC Trucking's motion to stay all discovery. The circuit court allowed the parties to conduct limited discovery directly related to the issues of Cottonport's potential ownership of Davis Island and whether the MWCA provided Mayberry's exclusive remedy.

¶33. After the time allowed for limited discovery expired, the Appellees filed a renewed joint motion to dismiss or, alternatively, a motion for summary judgment. Mayberry filed a motion in opposition and also a cross-motion for partial summary judgment on the issue of the Appellees' exclusive-remedy defense. The circuit court held a hearing on the motions.

¶34. After the hearing, the circuit court granted the Appellees' motion to dismiss or, in the

16

alternative, for summary judgment. The circuit court also granted BLC Trucking's motion to dismiss. The circuit court found that Cottonport was a general contractor, and not an owner, and therefore the exclusive remedy provided by the MWCA barred Mayberry from bringing a negligence claim against the Appellees and BLC Trucking.

¶35. Mayberry timely appealed.

## Standard of Review

¶36. The final judgment in this case stems from the Appellees' motion to dismiss or, in the alternative, for summary judgment. In its order, the circuit court did not expressly state whether it granted the Appellees' motion to dismiss or their motion for summary judgment. (The circuit court did expressly grant BLC Trucking's motion to dismiss, but it is not a party to this appeal.) Although the circuit court did not make any express findings as to whether the Appellees met their burden of proving that no genuine issue of material fact exists, the circuit court did acknowledge that the Appellees "argued that they are entitled to summary judgment because of the exclusive remedy to employees provided by the MWCA." The circuit court's order also reflects that it reviewed evidence outside of the pleadings in making its determination: "Discovery revealed that timber deeds were executed in favor of Cottonport. Under these deeds, it is clear that Cottonport had a contract to harvest timber on the Davis Island job site at the time of the incident." Additionally, during the hearing on the motions, the parties referenced the timber deeds and interrogatories. I therefore submit that the circuit court treated the Appellees' motion as one for summary judgment, and I will apply the requisite standard of review to this appeal.

17

¶37. This Court applies a de novo standard when reviewing a circuit court's grant of summary judgment. *Hibbler v. Ingalls Shipbuilding Shipyard*, 298 So. 3d 1022, 1026 (¶10) (Miss. Ct. App. 2019). Mississippi Rule of Civil Procedure 56(c) states that summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See id.* "When considering a motion for summary judgment, the deciding court must view all evidence in a light most favorable to the non-moving party." *Id*. (internal quotation mark omitted). I recognize that "[w]hile the movant has the burden of showing that no genuine issue of material fact exists, the party opposing the motion must be diligent and 'is required to set forth specific facts showing that genuine issues for trial do exist.'" *Id*. (quoting *Richardson v. Norfolk S. Ry. Co.*, 923 So. 2d 1002, 1007 (¶8) (Miss. 2006)).

**Discussion**

¶38. The issue before this Court is whether the circuit court erred in finding that Cottonport was a general or prime contractor, rather than an owner, for the purposes of the exclusive remedy defense of the MWCA.

¶39. The MWCA provides:

> (1) Compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease[.] . . .

> (6) In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured

18

such payment.

Miss. Code Ann. § 71-3-7(1), (6). The MWCA further states that if an employer provides workers' compensation coverage to its employees, then the workers' compensation payments are the employee's exclusive remedy against the employer for an injury:

> [T]he liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee . . . except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee ... may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death.

Miss. Code Ann. § 71-3-9.

¶40. This Court has held that "where a subcontractor provides compensation coverage to its employees pursuant to its contract with the prime contractor, the prime contractor qualifies as a statutory employer and is immune from a common law tort suit by the injured employee." *Hibbler*, 298 So. 3d at 1026 (¶11) (quoting *Salyer v. Mason Techs. Inc.*, 690 So. 2d 1183, 1184 (Miss. 1997)). "As to third parties, however, 'the acceptance of compensation benefits from an employer or insurer shall not affect the right of the employee or his dependents to sue any other party at law for such injury.'" *Id*. (quoting Miss. Code Ann. § 71-3-71) (Rev. 2011)).

¶41. Mayberry argues that timber owners, like owners of real property, are not general or prime contractors under section 71-3-7(6), and therefore timber owners are not afforded the exclusive remedy of workers' compensation under the statutory employer doctrine. In support of his argument, Mayberry cites to *Rodgers v. Phillips Lumber Co.*, 241 Miss. 590, 593, 130 So. 2d 856, 857-58 (1961), where the supreme court held that "Phillips Lumber

19

Company was the owner of the timber upon severance from the land. It was not a prime contractor . . . ." Mayberry asserts that because Cottonport owned the timber at issue, Cottonport was an owner, and not a general or prime contractor.

¶42. Mayberry further argues that there must be two contracts before an entity is considered a general or prime contractor: one with the owner of a project or job and one with a subcontractor. Mayberry maintains that in the present case, Cottonport had not been contracted by any entity for performance of the work that injured Mayberry. Mayberry also argues that Cottonport's ownership interest, use, and activities with respect to the premises are "wholly different" from those ordinarily considered general or prime contractors. Mayberry submits that because Cottonport was not a statutory employer for the purposes of the exclusive remedy defense, the circuit court erred in granting the Appellees' motion and in denying Mayberry's cross-motion for partial summary judgment.

¶43. In determining whether Cottonport, as the owner of the timber, constituted a statutory employer within the meaning of the exclusive remedy defense of the MWCA, I recognize that "a property owner does not become a 'contractor' just because it contracts with another entity to do work on its premises." *Rollins v. Hinds Cnty. Sheriff's Dep't*, No. 2018-WC-01614-COA, 2019 WL 6875377, at *3 (¶9) (Miss. Ct. App. Dec. 17, 2019) (citing *Thomas v. Chevron U.S.A. Inc.*, 212 So. 3d 58, 64 (¶22) (Miss. 2017)), *aff'd*, 306 So. 3d 702 (Miss. 2020). In *Chevron*, the supreme court defined a "chief or prime contractor" as one "who has a contract with the owner of a project or job, and has full responsibility for its completion." *Chevron*, 212 So. 3d at 64 (¶22). In determining whether a party is an "owner"

or a "general or prime contractor," our appellate courts have also looked to whether the party has a "duty as an employer or contractor to secure workers' compensation insurance." *Id*. at (¶23). The supreme court has held, "If a contractor-subcontractor relationship exists, the employee of a subcontractor covered by workers' compensation insurance is prohibited from making a common law claim for negligence or gross negligence against the contractor." *Richmond v. Benchmark Const. Corp.*, 692 So. 2d 60, 63 (Miss. 1997).

¶44. As stated, the record contains the order by the Commission finding that Kettley was Mayberry's statutory employer. The Commission accordingly awarded Mayberry workers' compensation benefits. The order states that "of the fifty-eight motions, supplemental motions, responses, joinders, limited joinders, replies, rebuttals, and surrebuttals filed in this claim, those filed by up-the-line contractors BLC and Cottonport confirm the Cottonport-BLC-Kettley-West line of contractors . . . ." The Commission accordingly dismissed the Appellees from the workers' compensation proceedings.

¶45. Mayberry then filed a negligence claim against the Appellees in circuit court seeking compensatory and punitive damages as a result of his injuries. The Appellees moved to dismiss Mayberry's complaint on the grounds that Cottonport was Mayberry's up-the-line statutory employer, and therefore the exclusive-remedy defense barred Mayberry from bringing a negligence claim against the Appellees. The Appellees further argued that Cottonport was a prime or general contractor, and not an owner, permittee, or lessee of real property.

¶46. In its order dismissing Mayberry's claim, the circuit court addressed Mayberry's

argument that Cottonport should be considered an "owner" under the MWCA, rather than a general or prime contractor. The circuit court acknowledged that warranty deeds were executed in favor of Cottonport for the purpose of granting Cottonport timber rights on Davis Island. The circuit court found, however, that the timber rights were Cottonport's only interest in the property at issue, and therefore the timber deeds alone were not sufficient to convey an ownership interest in the property for purposes of the MWCA. The circuit court explained that the timber deeds "are for the sole purpose of Cottonport cutting and removing timber until December 31, 2021, following best management practices of the Mississippi Forestry Association." The circuit court also found as follows: the timber had been physically severed from the land and was in the process of being loaded for transport at the time of Mayberry's injury; standing timber under contract for sale is classified as personal property rather than real property (citing *Feliciana Bank & Trust v. Manuel & Sessions LLC*, 943 So. 2d 736, 739 (Miss. 2006); Miss. Code Ann. § 75-9-102(a)(44)(ii) (Rev. 2016)); and Cottonport had workers' compensation coverage and required its subcontractor, BLC Trucking, to also secure coverage, which it did.

¶47. After reviewing the evidence, the circuit court determined that Cottonport was not a site owner, but rather a general contractor tasked with the job of cutting and removing timber. The circuit court held that because Cottonport was a general contractor, and not a site owner, the MWCA's exclusive remedy served as a bar to Mayberry's recovery from Cottonport. The circuit court also concluded that "[w]hen a subcontractor (Kettley) provides workers' compensation coverage to its employee (Mayberry), the prime contractor (Cottonport) is

22

considered a statutory employer and is, thereby, immune from a negligence action." The circuit court further held that Cottonport's employee, Moore, was also immune to liability under the MWCA. Upon reviewing the record and relevant caselaw, I agree with the circuit court's finding that Cottonport was a general contractor and that Mayberry's statutory employer under section 71-3-9.

¶48. The supreme court has held that an owner of timber upon severance from the land is not a prime contractor. *Phillips Lumber*, 130 So. 2d at 857-58; *see also Miss. Loggers Self Ins. Fund Inc. v. Andy Kaiser Logging*, 992 So. 2d 649, 656 (¶20) (Miss. Ct. App. 2008). As stated in the amici curiae brief filed on behalf of the Mississippi Forestry Association and the Mississippi Loggers Association, the *Phillips Lumber* court utilized "very little analysis" in reaching its conclusion that the owner of standing timber in that case was not a "statutory employer" for worker's compensation purposes. The amici curiae further maintain that in *Phillips Lumber*, the supreme court did not expressly state that timber ownership alone resolves the question of statutory employment. The amici curiae assert that in the sixty years since *Phillips Lumber* was decided, the supreme court has further clarified its "statutory employer" analysis. The amici curiae submit that whether an entity is a prime or general contractor is a fact-intensive inquiry, and that traditional contractor/subcontractor labels are not controlling. (Citing *Nash v. Damson Oil Corp.*, 480 So. 2d 1095, 1100 (Miss. 1985)). The amici curiae further assert that "the central question is whether the tort defendant 'occupied the position persons of common understanding would label general or prime contractor.'" (Citing *Salyer*, 690 So. 2d at 1186).

¶49. In support of its argument, the amici curiae cite a treatise on Mississippi workers' compensation laws. In this treatise, the authors clarified that the supreme court found the relationship in *Phillips Lumber* "to be timber vendor-vendee, not owner-contractor." John R. Bradley & Linda A. Thompson, Mississippi Workers' Compensation Law § 2:19 (2021 ed.). The authors then discussed the brevity of the supreme court's opinion in *Phillips Lumber*, stating, "The brevity of the analysis and subsequent developments give a caution about its likely future application on these facts." *Id*. The authors noted that "a slight factual variation could easily produce a different (subcontracting) result, especially if Phillips [Lumber] had duties to the owner, such as selection of trees to cut and to leave; and observing standards for logging trails, repair of ruts, and cleanup of debris." *Id*. The authors cited cases from two other jurisdictions where "different results have been reached on similar facts when the one in Phillips [Lumbers'] position agreed with the owner to more than just buy timber": *Evans v. Hawkins*, 150 S.E.2d 324 (Ga. Ct. App. 1966), and *Brothers v. Dierks Lumber & Coal Co.*, 232 S.W.2d 646 (Ark. 1950). The facts of *Evans* and *Dierks* are similar to those in the present case, and I find these cases instructive.

¶50. In *Evans*, the Georgia Court of Appeals determined that based on the specific facts of that case, the owner of the timber rights, Evans, constituted a principal contractor for workers' compensation purposes. *Evans*, 150 S.E.2d at 327. Evans executed a "Timber Sale Contract" with the United States Government which gave him the right to cut and remove certain timber from a government-owned forest. *Id*. at 326. In addition to receiving the timber rights, the contract "obligated [Evans] to perform substantial services for the

24

government which would help to preserve and maintain the [forest] in accordance with good forestry practices and which would enable the government . . . to evaluate rate of growth, timber yield, etc., in the . . . forest." *Id*. After entering into the contract with the government, Evans then contracted with Walker, an independent contractor, "to cut and remove the timber and to perform those services in behalf of the government which he was obligated to perform under the principal contract." *Id*. at 326-27.

¶51.    The Georgia Court of Appeals stated as follows:

> We do not hold that a mere contract for the sale of goods makes either the buyer or seller, or both, a 'contractor' within the meaning of [the workers' compensation act], but we are committed to the view that when the contract to sell is accompanied by an undertaking by either party to render substantial services in connection with the goods sold, that party is a 'contractor' within the meaning of the [act].

*Id*. at 327 (quoting *Dierks*, 232 S.W.2d at 650). Based on this reasoning, the court found that Evans constituted a principal contractor, explaining that "in connection with the principal contract," Evans was "obligated to perform substantial services," such as "to cut and remove the timber from the land of the seller and in connection therewith to perform other substantial services for the seller." *Id*. The court also found that "having executed the principal contract, [Evans] then in turn sublet the work to be performed thereunder to a third party[.]" *Id*.

¶52.    In *Dierks*, 232 S.W.2d at 650, the Arkansas Supreme Court held that a party is a contractor for workers' compensation purposes "when the contract to sell [goods] is accompanied by an undertaking by either party to render substantial services in connection with the goods sold." In that case, Dierks Lumber and Coal Company had a contract with

the United States government to remove timber from a national forest. *Id*. at 647. Although "[t]he central feature of the contract was that Dierks became the purchaser of certain timber, of which the [government] was the seller," the Arkansas Supreme Court found that "the contract was much more than a mere bill of sale." *Id*. at 648. The court explained that the contract "set out in great detail the manner in which Dierks was to cut and remove the timber[,]" noting that "an obvious objective of the contract, along with the sale of merchantable timber, was the doing of work by Dierks which would help to preserve and maintain the National Forest in accordance with good forestry practices." *Id*. Based on these facts, the court held that Dierks was a contractor, and not merely a purchaser of the timber. *Id*. at 650.[8]

¶53. Mayberry argues that none of the provisions in Cottonport's timber deeds obligate Cottonport to harvest the trees on Davis Island; rather, the timber deed only conveyed the ownership of the timber. Mayberry claims that Cottonport could have chosen not to cut a single tree and would not be in "violation" of the timber deed. Mayberry submits that as a result, the timber deed was not a contract for performance.

¶54. Turning to examine the deeds at issue, the record shows that in 2015, Diamond Barge Company LLC (Diamond Barge) executed a special warranty timber deed to Cottonport

---

[8] *Cf. Nickerson v. Patridge*, 241 Miss. 40, 45, 128 So. 2d 751, 752 (1961). In *Nickerson*, which was written the same year as *Phillips Lumber*, the supreme court held that a seller of timber had the right to insert into the deed certain conveyance provisions that would protect the timber not sold as well as the land. *Id*. The supreme court stated that these provisions did not make the buyer of the timber a contractor for the removal of timber and accordingly render it liable under the workers' compensation act. *Id*. The *Nickerson* court acknowledged the holding in *Dierks*, but it clarified that the facts in *Dierks* were different from those in the case before it. *Id*.

stating that Diamond Barge "does hereby sell, bargain, convey, transfer, assign, set over, abandon, deliver, and warrant specially" to Cottonport "all of its right, title, and interest in and to all timber owned by [Diamond Barge]" on Davis Island, as well as easements for ingress and egress. The deed also stated that "[t]his conveyance of Timber is specifically subject to the terms and conditions" of the other three concurrent timber interests on the same land. Diamond Barge reserved the right to use the easements listed in the deed. The deed further stated that Cottonport would waive, discharge, and release Diamond Barge "from any and all claims and/or causes of action which [Cottonport] may have or hereafter be otherwise entitled to, whether affecting person and/or property."

¶55. In 2017, MB & LB Investments LLC also conveyed a warranty timber deed to Cottonport. Although this deed granted timber rights to Cottonport, it also placed limitations on Cottonport's right to come onto the Davis Island property. Specifically, the deed provided that from the date of the conveyance until December 31, 2021 (a period of approximately four years), Cottonport "shall have the right to enter said Timberlands repeatedly *for purposes of cutting and removing Timber* from the property as such times as it may elect under the terms of this Warranty Timber Deed[.]" (Emphasis added). The deed also stated that Cottonport

> agrees that all Timber harvesting activities will be in accordance with the recommended Best Management Practices of Mississippi, as established by the Mississippi State Forestry Association and agrees to conduct its operations in a manner consistent with usual practice in the industry and will use reasonable care to prevent unnecessary damage to the premises hereinabove described[.]

In addition to this restriction, Cottonport also agreed to the following: to maintain all weather

27

roads on the property; to not destroy or block access roads; to indemnify the property owner from lawsuits; to obtain liability insurance; and to provide worker's compensation insurance. I find that pursuant to this deed, Cottonport had only a limited right to enter and utilize the real property, despite its ownership of the timber located on the property.

¶56.    Additionally, the record shows that Cottonport contracted with BLC Trucking to haul timber to various lumber yards.  The circuit court found that Cottonport possessed workers' compensation coverage and that Cottonport also required BLC Trucking to secure coverage. A review of the Commission's order shows that the AJ referenced BLC Trucking's Certificate of Insurance showing it procured workers' compensation coverage from January 1, 2017 to January 1, 2018, with Cottonport as the certificate holder.[9]  Cottonport maintains that it has complied with the requirements of the MWCA in order to avail itself of the exclusivity provisions outlined therein.  As stated, "where a subcontractor provides compensation coverage to its employees pursuant to its contract with the prime contractor, the prime contractor qualifies as a statutory employer and is immune from a common law tort suit by the injured employee." *Hibbler*, 298 So. 3d at 1026 (¶11).

¶57.    The recent case of *Hibbler*, 298 So. 3d at 1029 (¶20), also supports the finding that Cottonport was a prime contractor and therefore, entitled to the benefit of the workers' compensation act's exclusive remedy provision through up-the-line immunity.  In *Hibbler*,

---

[9] This document, and other motions and filings referenced in the Commission's order, are not part of the record before this Court on appeal.  Although this document is not in the record, this Court can take judicial notice of it.  *See Teal v. Jones*, 222 So. 3d 1052, 1057-58 (¶¶20-21) (Miss. Ct. App. 2017); *Grogan v. State*, 89 So. 3d 617, 622 (¶13) (Miss. Ct. App. 2011) (holding a reference in the circuit court's order to a prior order "is sufficient to take judicial notice of its existence").

Ingalls contracted with the United States Navy to build a ship. *Id*. at 1024 (¶2). All construction on the ship took place at Ingalls' shipyard in Pascagoula, Mississippi. *Id*. at (¶4). Ingalls contracted with Avaya Government Solutions ("Avaya") to install a telecommunications system on the ship. *Id*. at (¶2). Avaya's employee, John Hibbler, was injured while in the course of his duties. *Id*. at (¶3). Hibbler collected worker's compensation benefits from Avaya, but he later filed a negligence suit against Ingalls. *Id*. at 1025 (¶¶4-5). The circuit court granted summary judgment in favor of Ingalls after finding that Ingalls was Hibbler's statutory employer at the time of the accident and was therefore immune from Hibbler's claims by the exclusive remedy provisions of the MWCA. *Id*. at (¶8).

¶58. On appeal, Hibbler argued that because Ingalls owned the shipyard premises, it could not be a general or prime contractor. *Id*. at 1027 (¶13). This Court rejected Hibbler's argument, opining:

> [I]rrespective of whether Ingalls owned the shipyard itself . . . the record evidence shows that Ingalls, in building the ship at issue, can be seen as nothing other than what persons of common understanding would label that of a general or prime contractor. Further, Ingalls hired Avaya as a subcontractor to assist in the ship's completion, and Ingalls required Avaya to provide workers' compensation coverage for its employees, consonant with the obligations set forth in section 71-3-7(6).

*Id*. at 1027-28 (¶14) (citation and internal quotation marks omitted). These facts together showed that Ingalls was the "general contractor" with respect to Hibbler's "subcontractor" employer. This Court accordingly affirmed the circuit court's findings that Ingalls was Hibbler's statutory employer and therefore immune from common law tort claims. *Id*. at

29

1029 (¶20).

¶59. After examining the record and considering the specific facts of the present case, I find that the timber deeds herein constitute a prime contract. I further find that Cottonport acted as the prime contractor for the timber removal project by locating and retaining necessary subcontractors to cut, haul, and process the timber it purchased. As noted in *Thomas*, "this Court has never treated *the owner of land* as a prime or general contractor for the purposes of the Workers' Compensation Act." *Thomas*, 212 So. 3d at 64 (¶22) (emphasis added). However, Cottonport is not an owner of land. The circuit court correctly concluded that "Cottonport holds no ownership interest in the land on which the accident took place but only a limited right to cut timber for a limited time." *See Feliciana Bank & Tr.*, 943 So. 2d at 739 (¶14) ("The legislature has certainly defined standing timber as personal property upon the execution of a contract for its cutting."). Unlike the timber owner in *Phillips Lumber*, it is clear in this case that Cottonport "had duties to the [real property] owner[s]." Bradley & Thompson, *supra* ¶49, § 2:19. The timber deeds imposed specific obligations on Cottonport, including the obligation to complete the project within a certain term while utilizing certain practices, and to ensure its subcontractors fulfilled the obligations of its contract with the property owners.

¶60. Additionally, there is no dispute that Cottonport required BLC Trucking, as its subcontractor, to secure workers' compensation coverage, and BLC Trucking secured coverage. Based on the facts before us, Cottonport qualifies as a statutory employer, and Cottonport is therefore immune from suit. As an employee of Cottonport, Moore is also

30

immune from Mayberry's negligence suit. *See Powe v. Roy Anderson Const. Co.*, 910 So. 2d 1197, 1200 (¶9) (Miss. Ct. App. 2005) ("It is well-settled law in Mississippi that . . . immunity [afforded by workers' compensation] extends not only to employers, but also to employees and officers or agents acting in the course and scope of their employment.").

¶61.    After reviewing the record, I would affirm the circuit court's grant of summary judgment.  I therefore respectfully dissent.

**GREENLEE, McCARTY AND SMITH, JJ., JOIN THIS OPINION.**